2010 UT 56

**STATE of Utah, Plaintiff and Respondent,**

v.

**Jeff Brian HARKER, Defendant and Petitioner.**

**No. 20090125.**

Supreme Court of Utah.

Sept. 28, 2010.

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Scott L. Wiggins, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case is before us on writ of certiorari to the court of appeals and requires us to determine the meaning of "in the presence" as that phrase is set forth in section 77–7–2(1) of the Utah Code, which allows an officer to make an arrest for a class B misdemeanor only if the offense was committed "in the presence" of an officer.[1] In addition, this case requires us to determine whether evidence must be excluded if it is obtained in a search incident to an arrest that is supported by probable cause but is not supported by

---

1. Utah Code Ann. § 77–7–2(1) (2008).

statutory authority. We determine that the "in the presence" language of Utah Code section 77–7–2(1) requires officers to have experienced, firsthand through one of their physical senses, all of the elements of the offense in order to have statutory authority to make an arrest for a class B misdemeanor. But we hold, following the United States Supreme Court's recent holding in *Virginia v. Moore*,[2] that even when officers do not have statutory authority, a warrantless arrest based on probable cause does not violate the Fourth Amendment and, therefore, evidence seized in a search incident to such an arrest need not be excluded.

## BACKGROUND

¶ 2 On the afternoon of May 30, 2006, Jeff Brian Harker was traveling north on Highway 89 and, in the process of attempting to turn left, collided with an oncoming vehicle. Thereafter, North Salt Lake Police Officer Adam Osoro appeared at the scene. Officer Osoro obtained driver licenses and vehicle registration and insurance information from both Mr. Harker and the driver of the other vehicle. The dates on Mr. Harker's insurance card indicated that the insurance was currently effective, but when Officer Osoro ran a computer check, the insurance on Mr. Harker's car was "not found." Assisting Officer Gwillam told Officer Osoro that Mr. Harker had a history with the North Salt Lake Police Department, so Officer Osoro decided to further investigate Mr. Harker's insurance. Officer Gwillam called Mr. Harker's insurance company and was informed that Mr. Harker's insurance had been canceled and told this to Officer Osoro. When asked about the insurance, Mr. Harker explained that the policy had been canceled because he had failed to make his payments. Officer Osoro then arrested Mr. Harker for operating a motor vehicle without owner's or operator's security (insurance) and for providing false evidence of owner's or operator's security.

¶ 3 Officer Osoro proceeded to search Mr. Harker incident to this arrest and found a substance in Mr. Harker's pocket that field tested positively for methamphetamine, which the Davis County Crime Laboratory later confirmed. In addition, Officer Osoro's search revealed Mr. Harker to be in possession of cash, Lortab pills, and a residue-tainted piece of glass pipe, which Officer Osoro recognized as drug paraphernalia.

¶ 4 The State charged Mr. Harker with possession or use of a controlled substance (methamphetamine), possession or use of a controlled substance (Lortab), possession of drug paraphernalia, having no evidence of security, making an illegal turn, and failure to yield.

¶ 5 Mr. Harker initially pleaded not guilty to the charges. At a preliminary hearing, he was bound over on all charges. Mr. Harker then moved to suppress the evidence that was found during the search incident to his arrest. After hearing argument on the motion to suppress the evidence, the court denied the motion because it determined that Officer Osoro "had probable cause to arrest [Mr. Harker], and that probable cause is based upon the Officer's knowledge and his hearing and other senses." Mr. Harker then pleaded no contest to possession of methamphetamine and possession of drug paraphernalia, and the remaining charges were dismissed. Pursuant to the plea, Mr. Harker preserved his right to appeal the district court's denial of the motion to suppress. The district court sentenced Mr. Harker to zero to five years in prison on his conviction for possession of methamphetamine and 180 days in jail on his conviction for possession of drug paraphernalia. The court suspended the prison and jail terms conditioned upon Mr. Harker's serving one year in the Davis County Jail and three years probation and participating in the RSAT drug program.

¶ 6 Mr. Harker timely appealed, claiming that the district court should have suppressed the evidence obtained in the search incident to his arrest on the ground "that his arrest for operating a vehicle without insurance and for providing false evidence of insurance was not supported by probable cause because he did not commit the offenses in the presence of the arresting offi-

**2.** 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008).

cer."[3] The court of appeals held that Mr. Harker's arrest for driving without insurance was supported by probable cause and statutory authority and affirmed Mr. Harker's convictions.[4]

¶ 7 Mr. Harker petitioned this court for certiorari review, which we granted to determine whether the court of appeals erred when it held there was probable cause and statutory authority to arrest Mr. Harker. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a).

## STANDARD OF REVIEW

¶ 8 "On certiorari, we review the decision of the court of appeals, not the decision of the trial court."[5] We review the court of appeals' decision for correctness, "giving no deference to its conclusions of law."[6] Further, issues regarding the constitutionality of arrests and searches present questions of law that we review for correctness.[7]

## ANALYSIS

¶ 9 We granted certiorari to determine whether there was statutory authority and probable cause to arrest Mr. Harker. We begin our analysis by assessing whether Mr. Harker's arrest was supported by statutory authority. The answer depends on the meaning of the requirement set out in Utah Code section 77–7–2(1) that certain public offenses occur in the presence of an officer in order for the officer to have authority to make an arrest. We conclude that this stat-

ute requires an officer to have experienced, firsthand through one of the officer's physical senses, all of the elements of the offense. We further conclude that an admission of having committed a public offense does not satisfy the "in the presence" requirement set out in section 77–7–2(1). Thus, because an officer did not perceive Mr. Harker driving without insurance firsthand, we conclude that Mr. Harker's arrest was not supported by statutory authority.

¶ 10 But the real dispute in this case centers around whether the evidence obtained in the search incident to Mr. Harker's arrest is admissible. Whether the evidence is admissible depends upon whether the arrest violated the Fourth Amendment of the United States Constitution.[8] An arrest violates the Fourth Amendment when it is unsupported by probable cause.[9] Here we must assess the admissibility of evidence seized during a search incident to a warrantless arrest that is supported by probable cause but not authorized by statute. Pursuant to the United States Supreme Court's recent holding in *Virginia v. Moore*,[10] we conclude that, under the Fourth Amendment, courts need not exclude evidence if it is uncovered in a search incident to a *constitutionally permissible* arrest, even if the arrest is not authorized by statute, and that an arrest is constitutionally permissible if it is based on probable cause. We conclude that Mr. Harker's arrest was constitutional under the Fourth Amendment because it was based on probable cause. Accordingly, the evi-

---

3. *State v. Harker*, 2008 UT App 455U, para. 1, 2008 WL 5191195.

4. *Id.* paras. 4–5. Because the court of appeals concluded that Mr. Harker was properly arrested for driving without insurance, it did not reach whether Mr. Harker was properly arrested for providing false evidence of security. *Id.* para. 4 n. 1.

5. *State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1995).

6. *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650.

7. *See Harmon*, 910 P.2d at 1199.

8. Mr. Harker alleges that his arrest and the search incident to his arrest violated article I, section 14 of the Utah Constitution as well as the

Fourth Amendment to the United States Constitution. But Mr. Harker does not argue that the Utah Constitution affords him greater protection than the United States Constitution, nor does he provide any analysis of how the two constitutional provisions differ, so we address the issue only under the United States Constitution.

9. *See, e.g., State v. Worwood*, 2007 UT 47, ¶ 21, 164 P.3d 397.

10. 553 U.S. 164, 176–78, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (holding that statutory authority is not required for a warrantless arrest to be considered constitutionally permissible under the Fourth Amendment).

dence seized in the search incident to Mr. Harker's arrest is admissible regardless of the arresting officer's lack of statutory authority.

## I. MR. HARKER'S ARREST FOR DRIVING WITHOUT INSURANCE WAS NOT AUTHORIZED BY STATUTE BECAUSE HE DID NOT DRIVE "IN THE PRESENCE" OF AN OFFICER

¶ 11 There was no statutory authority to arrest Mr. Harker for driving without insurance because all of the elements of the offense did not actually occur in the presence of a peace officer. Utah Code section 77–7–2(1) permits an officer to arrest a person for "public offense[s]," which include class B misdemeanors like driving without insurance, only if the offense was committed "in the presence" of the officer. Determining what "in the presence" means in the context of this provision is an issue of statutory interpretation.

¶ 12 Our " 'primary objective' " when interpreting statutes " 'is to give effect to the legislature's intent.' "[11] "To discern legislative intent, 'we look first to the statute's plain language.' "[12] Also, when interpreting statutes, " '[w]e presume that the legislature used each word advisedly' and read 'each term according to its ordinary and accepted meaning.' "[13] Additionally, " '[w]e read the plain language of [a] statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters.' "[14] Furthermore, if "the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed."[15] Here, the plain meaning of the statute can clearly be discerned from its language.

¶ 13 Section 77–7–2 explicitly states that "[a] peace officer ... may, without warrant, arrest a person ... for any public offense committed or attempted in the presence of any peace officer."[16] In addition, the statute explicitly defines what "presence" means: " 'presence' includes all of the physical senses or any device that enhances the acuity, sensitivity, or range of any physical sense, or records the observations of any of the physical senses."[17] The meaning of these provisions is clear: this statute requires an officer to witness the public offenses in the manner described before making an arrest. Further, when section 77–7–2 is read as a whole, it is apparent that the legislature intended to impose a higher burden on officers wishing to arrest without a warrant for lower-level offenses, like class B misdemeanors, than for higher-level offenses. The Utah Code authorizes an officer to make an arrest for a class B misdemeanor, like driving without insurance, only if the offense is committed "in the presence" of an officer, but the remaining subsections of section 77–7–2 authorize an officer to make an arrest for a more serious offense, such as a felony or a class A misdemeanor, when there is a showing of "reasonable cause."[18] Unlike the "reasonable cause" requirement, which allows an officer to make inferences based on facts known to the officer,[19] an "in the pres-

---

**11.** *LPI Servs. v. McGee,* 2009 UT 41, ¶ 11, 215 P.3d 135 (quoting *Savage v. Utah Youth Vill.,* 2004 UT 102, ¶ 18, 104 P.3d 1242).

**12.** *Id.* (quoting *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints,* 2007 UT 42, ¶ 46, 164 P.3d 384).

**13.** *Martinez,* 2007 UT 42, ¶ 46, 164 P.3d 384 (quoting *State v. Barrett,* 2005 UT 88, ¶ 29, 127 P.3d 682).

**14.** *LPI Servs.,* 2009 UT 41, ¶ 11, 215 P.3d 135 (quoting *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592).

**15.** *Id.* (citing *Martinez,* 2007 UT 42, 47, 164 P.3d 384).

**16.** Utah Code Ann. § 77–7–2(1)(a) (2008). "The term 'public offense' under section 77–7–2(1) generally includes misdemeanors." *State v. Trane,* 2002 UT 97, ¶ 29, 57 P.3d 1052.

**17.** Utah Code Ann. § 77–7–2(1)(b).

**18.** *Compare* Utah Code Ann. § 77–7–2(1) *with* Utah Code Ann. § 77–7–2(2).

**19.** We have treated the term "reasonable cause," as employed by section 77–7–2, as synonymous with "probable cause." *See State v. Banks,* 720 P.2d 1380, 1383 (Utah 1986). Probable cause arises out of "facts and circumstances within the officer's knowledge." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

ence" requirement does not allow inferences to be drawn. Rather, this requirement is only satisfied if the officer actually witnesses the offense. Had the legislature intended to enable officers to make arrests for class B misdemeanors based on a showing of reasonable cause, they could have written the statute accordingly. Therefore, based on the ordinary meaning of "presence," the statutory definition of "presence," and a reading of section 77–7–2 as a whole, it is clear that the plain meaning of the "in the presence" requirement contained in section 77–7–2(1) is that an officer must have experienced, firsthand through one of his physical senses, all of the elements of the offense.

■ ¶ 14 The State urges us to find that an admission of having committed a public offense satisfies the "in the presence" requirement set out in Utah Code section 77–7–2(1). The State relies on *Utah Liquor Control Commission v. Wooras,* where this court held that an admission of having committed an offense satisfied the "in the presence" requirement set forth under the State Liquor Control Act.[20] But where a statute explicitly defines a term, we do not need to look to case law interpreting an unrelated seventy-year-old statute for guidance. Here, the plain language of Utah Code section 77–7–2(1) is clear. The statute specifically defines the term "presence" and this definition does not include an exception for an admission of an offense made prior to an arrest. Because the legislature explicitly defined the term "presence" and could have, but did not, include an exception to the "in the presence" requirement for admissions of guilt, we decline the State's invitation to read such an exception into the statute's plain language.

¶ 15 In this case, Mr. Harker was arrested for violating Utah Code section 41–12a–302, which makes operating a motor vehicle on a Utah highway without insurance a class B

misdemeanor. Thus, the "in the presence" requirement set forth in section 77–7–2(1) means that an officer must have experienced, through the officer's physical senses, that Mr. Harker was driving on a Utah highway without insurance. Here, it is not disputed that the officers arrived at the scene of the automobile accident around ten minutes after Mr. Harker ceased driving his vehicle. Thus, Mr. Harker did not drive "in the presence" of the officers.

¶ 16 Because Mr. Harker did not drive "in the presence" of an officer, and because an admission of having committed a public offense does not satisfy section 77–7–2's "in the presence" requirement, we hold that Mr. Harker's arrest for driving without insurance was not authorized by statute. But as discussed below, even though Mr. Harker's arrest for driving without insurance was not authorized by statute, the presence or absence of statutory authority is not determinative of the constitutional permissibility of an arrest under the Fourth Amendment, which requires only that arrests be supported by probable cause. Because probable cause supported Mr. Harker's arrest, the evidence obtained during the search incident to Mr. Harker's arrest is still admissible.[21]

II. MR. HARKER'S ARREST WAS "LAWFUL" UNDER THE CONSTITUTION AND, THEREFORE, THE SEARCH INCIDENT TO THE ARREST WAS VALID AND THE EVIDENCE OBTAINED DURING THE SEARCH IS ADMISSIBLE

■ ¶ 17 The Fourth Amendment to the United States Constitution provides to the people the right to be secure against unreasonable searches and seizures.[22] Pursuant to the exclusionary rule announced by the United States Supreme Court in *Mapp v.*

20. 97 Utah 351, 93 P.2d 455, 460 (1939) (interpreting Utah Rev. Stat. § 46–7–17 (Supp.1939)).

21. *See Virginia v. Moore,* 553 U.S. 164, 176–78, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008). Mr. Harker does not argue that mere violation of section 77–7–2(1)'s "in the presence" requirement (apart from any constitutional violation) requires exclusion of evidence obtained in a search incident to an arrest not authorized by

that statute. Accordingly, we do not consider whether there is some basis other than the Fourth Amendment for excluding evidence obtained in a search incident to an arrest made by an officer without the authority this statute grants.

22. U.S. Const. amend. IV.

*Ohio*, evidence obtained in unreasonable searches and seizures in violation of the Fourth Amendment is excluded from criminal proceedings.[23] Under the Fourth Amendment, " 'warrantless searches are per se unreasonable unless undertaken pursuant to a recognized exception to the warrant requirement.' "[24] One of these exceptions is a search incident to a *lawful* arrest. The Supreme Court has made it clear that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."[25] At issue here is whether Mr. Harker's arrest was "lawful" under the exception to the Fourth Amendment's warrant requirement for searches incident to a lawful arrest even though it was not authorized by Utah statute.

¶ 18 We recognize the potential for confusion when we and the United States Supreme Court refer to an arrest not authorized by statute as a "lawful" arrest. Throughout this opinion, the term "lawful" refers only to an arrest's lawfulness under the United States Constitution. It does not refer to whether the arrest occurred in violation or without authorization of any statute. In other words, "lawful," as used in this context, means only constitutionally permissible.

¶ 19 The recent United States Supreme Court decision in *Virginia v. Moore* makes it clear that for an arrest to be "lawful" in the context of searches incident to a lawful arrest, all that is required is that the arrest be constitutional; and all the Constitution requires for an arrest to be "lawful" is

for the arrest to be based on probable cause.[26] Before the decision in *Moore* and without the guidance that case provided, this court stated in *State v. Trane* that for an arrest to be "lawful" in the context of searches incident to a lawful arrest, the arrest must be supported by the United States Constitution *and* be authorized by statute.[27] But in *Moore*, the United States Supreme Court made clear that statutory authority is not required for a warrantless arrest to be considered "lawful" under the Fourth Amendment.[28] In *Moore*, the Court addressed, for the first time, the issue presented here: "whether a police officer violates the Fourth Amendment by making an arrest based on probable cause but prohibited by state law."[29] The Court stated that "officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence."[30] The Court then defined a constitutionally permissible arrest as "an arrest based on probable cause."[31] Because arrests based on probable cause are "lawful" under the Fourth Amendment, the evidence obtained in a search incident to such an arrest is not excluded.

¶ 20 The United States Supreme Court has repeatedly defined probable cause as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense."[32] While probable cause certainly exists if an offense occurs in the presence of an officer, it may still exist even if an offense did

**23.** 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**24.** *State v. Trane*, 2002 UT 97, ¶ 22, 57 P.3d 1052 (quoting *State v. Brown*, 853 P.2d 851, 855 (Utah 1992)).

**25.** *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

**26.** 553 U.S. 164, 174–78, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008).

**27.** 2002 UT 97, ¶ 25, 57 P.3d 1052.

**28.** 553 U.S. at 176, 128 S.Ct. 1598.

**29.** *Id.* at 166, 128 S.Ct. 1598.

**30.** *Id.* at 176, 128 S.Ct. 1598.

**31.** *Id.* at 177, 128 S.Ct. 1598.

**32.** *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *see also Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

not occur in the officer's presence because an officer could know of facts that could lead a reasonable and prudent person in the officer's position to fairly infer and be justified in believing that a suspect had committed an offense. Put differently, it is clearly established that probable cause to support an arrest under the Fourth Amendment can exist even if the crime is committed outside the officer's presence. Indeed, *Moore* establishes that a state law requiring an officer's presence does not impact the constitutionality of such an arrest.

¶ 21 In Mr. Harker's case, even though Officer Osoro did not see Mr. Harker driving without insurance, a reasonable and prudent person in Officer Osoro's position could fairly infer from the facts known to him, and be justified in believing, that Mr. Harker had driven his vehicle without insurance. Officer Osoro responded to a report of a traffic accident and upon arrival saw two vehicles, one of which was Mr. Harker's, blocking traffic on Highway 89. Witnesses told Officer Osoro that Mr. Harker's Bronco turned left in front of the oncoming traffic and caused the accident. There was no indication that any other person could have been the driver of Mr. Harker's vehicle. And when Officer Osoro asked the individuals he believed were involved in the accident to provide documentation, Mr. Harker gave Officer Osoro his license, registration, and evidence of insurance. Furthermore, there is no question that Mr. Harker did not have valid insurance on the vehicle involved in the accident because a computer check indicated a lack of insurance, and Officer Gwillam confirmed that Mr. Harker did not have insurance on the vehicle by calling the insurance company listed on the insurance card that Mr. Harker provided the officers. These facts certainly satisfy the "reasonable and prudent person" probable cause standard.

¶ 22 The only infirmity underlying Mr. Harker's arrest is the statutory provision that requires "presence." While the lack of presence means that the arrest was made without statutory authority, *Moore* makes clear that statutory authority is irrelevant to an arrest's constitutionality and, therefore, also irrelevant to the exclusion of evidence under the Fourth Amendment.

¶ 23 So, because the facts known to Officer Osoro, and the inferences that can fairly be drawn from those facts, could lead a reasonable and prudent person in Officer Osoro's position to be justified in believing that Mr. Harker had committed the offense of driving without insurance, Officer Osoro had probable cause to arrest Mr. Harker. Thus, Mr. Harker's arrest was lawful in the Fourth Amendment context and the evidence obtained in the search incident to that arrest is admissible.[33]

## CONCLUSION

¶ 24 Although Mr. Harker's arrest did not satisfy the "in the presence" requirement set forth in Utah Code section 77–7–2(1), pursuant to *Virginia v. Moore*, the arrest was nevertheless "lawful" under the United States Constitution because it was based on probable cause. Because Mr. Harker's arrest was "lawful" under the United States Constitution, the search incident to Mr. Harker's arrest was not a violation of the Fourth Amendment and the evidence obtained during that search need not be excluded. Accordingly, we affirm.

¶ 25 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Judge DEVER concur in Associate Chief Justice DURRANT's opinion.

¶ 26 Justice WILKINS does not participate herein; District Judge L.A. DEVER sat.

---

**33.** The court of appeals did not reach the question of whether Mr. Harker was properly arrested for providing false evidence of security. Similarly, because we hold that Mr. Harker's arrest for driving without insurance was "lawful" under the United States Constitution and that therefore, the search incident to Mr. Harker's arrest was valid under the Fourth Amendment, we need not address whether Mr. Harker was also justifiably arrested for providing false evidence of security.