**2015 UT App 223**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ROBERT C. KROPF,
Defendant and Appellant.

Opinion
No. 20130792-CA
Filed September 3, 2015

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 091402852

Debra M. Nelson and Christine Seaman, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which
JUDGES JAMES Z. DAVIS and KATE A. TOOMEY concurred.

ROTH, Judge:

¶1     Robert C. Kropf appeals from the district court's imposition of a permanent criminal stalking injunction. We affirm.

## BACKGROUND

¶2     In September 2010, Kropf pleaded guilty to two third degree felonies: stalking and failure to respond to an officer's signal to stop. In exchange for his pleas, the State agreed to recommend that Kropf's prison sentences run concurrently with each other and with other sentences Kropf was then serving. At

the combined plea and sentencing hearing, the district court advised Kropf that two zero-to-five-year prison sentences and two $5,000 fines constituted "the maximum penalties" for his offenses. The court then inquired about whether the parties had "anything else to talk about" before sentencing. The parties affirmatively indicated that there was nothing further to discuss. Accordingly, the district court accepted the sentencing recommendation and ordered Kropf to serve two concurrent sentences of zero-to-five years at the Utah State Prison. Kropf was released on parole on or about April 30, 2013.

¶3     In early April 2013, shortly before Kropf's release, the person he had been stalking (the Petitioner) asked the district court to impose a permanent criminal stalking injunction against Kropf. The Petitioner asserted that Utah Code section 76-5-106.5 (the stalking statute) "provides for permanent criminal stalking injunctions for victims of the crime of stalking" to be automatically imposed upon conviction. *See* Utah Code Ann. § 76-5-106.5(9)(b) (LexisNexis 2008) (providing that after a conviction of stalking, "[a] permanent criminal stalking injunction shall be issued by the court without a hearing unless the defendant requests a hearing at the time of the conviction").[1] Recognizing that after entry of sentence and final judgment the district court no longer had jurisdiction over Kropf, the Petitioner contended the failure to enter the injunction at the time of sentencing was an oversight amounting to clerical error under rule 30 of the Utah Rules of Criminal Procedure. Thus, Petitioner asserted, the court could correct that error despite the termination of its jurisdiction. Alternatively, the Petitioner contended that the failure to enter the injunction either resulted

---

1. Because there have been substantive amendments to the stalking statute, we cite the 2008 version of the pertinent statute, which was the version in effect at the time of Kropf's offenses. Otherwise, unless noted, we cite to the current version of pertinent statutes.

in Kropf receiving an illegal sentence, which the court had the authority to correct under rule 22 of the Utah Rules of Criminal Procedure, or amounted to inadvertent error subject to correction under rule 60(b)(6) of the Utah Rules of Civil Procedure. The district court scheduled a hearing on the Petitioner's motion.

¶4     The day before the hearing, Kropf filed an objection to the entry of the injunction on the basis that the district court lacked jurisdiction to reopen the case after sentencing and, even if the court did have jurisdiction to enter the injunction, doing so would violate his double jeopardy and due process rights. The judge had not seen the objection beforehand, but once it was brought to the court's attention at the hearing, the judge indicated that he would be willing to grant a continuance to allow the State or the Petitioner's attorney[2] an opportunity to respond. After both Kropf and the Petitioner informed the court

---

2. Although the State was represented at the hearing, only the Petitioner, through her attorney, addressed the court. In a footnote in his brief on appeal, Kropf asserts that the Petitioner lacked standing to move for an injunction because she was not a party to the criminal case. In the district court, however, Kropf only challenged the Petitioner's standing to assert rule 60(b) of the Utah Rules of Civil Procedure as a basis for reopening the sentencing. Thus, to the extent that Kropf is raising a standing argument about the Petitioner's ability to seek an injunction on appeal, Kropf failed to preserve this issue or to identify any exceptions to the preservation rule. *See State v. Garner*, 2008 UT App 32, ¶¶ 11, 13, 177 P.3d 637 (explaining that "[t]o preserve an issue for appeal, a defendant must enter an objection on the record that is both timely and specific" and if the claim is not preserved in the district court, then it "may not be raised on appeal" unless raised under certain exceptions (citations and internal quotation marks omitted)). We therefore do not address standing.

of their desire to proceed, Kropf argued that the court lacked authority to enter the injunction because its jurisdiction had ended on entry of the sentence and neither rule 30 nor rule 22 of the Utah Rules of Criminal Procedure cured that problem. He contended that although rule 30 allows the court to correct a clerical error, no clerical error occurred in his case because the "court does not have to impose a stalking injunction" and the court's failure to impose one at sentencing therefore amounted to an exercise of its judicial discretion. Kropf conceded that rule 22 authorizes a court to correct an illegal sentence, but he argued that because imposition of an injunction was discretionary, there was nothing "patently or manifestly illegal about the sentence" imposed by the court. Alternatively, Kropf asserted that adding additional terms to his sentence more than two-and-a-half years after he entered his guilty pleas violated his constitutional protection against double jeopardy. The court determined that because the plain language of the stalking statute requires imposition of a permanent criminal stalking injunction once a defendant is convicted of stalking and an injunction had not been imposed as a part of sentencing, the sentencing court must have "simply overlooked" that requirement. That error, the court concluded, "qualifie[d] under the rubric of clerical error" pursuant to rule 30 and was therefore subject to correction. The court also agreed with the State that rule 22(e) of the Utah Rules of Criminal Procedure provided "a basis to modify the sentence" because the injunction "absolutely was required to have been entered" as a term of the sentence. The court did not rule on Kropf's double jeopardy argument but implicitly rejected it by deciding the substantive issue under rule 30 and rule 22.

¶5    Kropf then asked the court to schedule an evidentiary hearing, which he argued he was entitled to under the stalking statute, focusing on the substantive question of whether "the injunction actually should be imposed." At the Petitioner's suggestion, the district court asked Kropf if he was prepared to go forward with such a hearing immediately. Kropf did not present or proffer any evidence, and the district court denied

Kropf's request for a later evidentiary hearing. In so ruling, the court concluded that "this has been a hearing" contemplated by the stalking statute. The court then imposed the stalking injunction. The court issued the injunction on a standard form and checked the box indicating that there was "good cause . . . to issue a permanent criminal stalking injunction, pursuant to Section 76-5-106.5."

¶6 Following the hearing, the court issued its written order. The court stated,

> The non-issuance of a permanent criminal stalking injunction was a mistake resulting from an oversight by the Court, and was not the result of judicial reasoning. The parties did not bring [the permanent criminal stalking injunction statute] to the attention of the Court and the Court failed to note that statute, but that statute required the entry of a permanent criminal stalking injunction in this case.

"Because the non-issuance of the permanent criminal stalking injunction was an oversight rather than a judicial decision to not comply with the statute," the district court concluded that it "retain[ed] jurisdiction to correct that oversight pursuant to Utah R. Crim. P. 30(b)." The court also reiterated its conclusion that Kropf "had the opportunity to be heard" and was "not entitle[d] . . . to an evidentiary hearing to determine whether the entry of a permanent criminal stalking injunction [was] unnecessary or unduly burdensome." The court did not include its rule 22 ruling in the written order. Kropf appeals.

## ISSUES AND STANDARDS OF REVIEW

¶7 Kropf argues that the district court lacked jurisdiction to reopen his case to impose the injunction. Procedural questions "present questions of law that we review for correctness without

deference to the lower court's ruling." *State v. Candedo*, 2010 UT 32, ¶ 7, 232 P.3d 1008. Resolution of the jurisdiction question in this case depends also upon the propriety of the district court's interpretation of the stalking statute. We review the district court's interpretation of a statute for correctness. *See State v. Johnson*, 2009 UT App 382, ¶ 16, 224 P.3d 720.

¶8 Kropf also contends that in imposing the injunction, the district court deprived him of certain constitutional rights. Kropf claims that the constitutional protection against double jeopardy precluded the district court from "imposing the permanent criminal stalking injunction after judgment had already been imposed and Kropf had gained a legitimate interest in its finality." He also argues that the district court violated his due process rights because he "was never given notice" that an injunction could be part of his criminal sentence and the injunction was entered without an evidentiary hearing. "Whether the entry of the district court's amended order . . . violates protections afforded by the Double Jeopardy Clause or the Due Process Clause presents constitutional issues that are questions of law that [appellate courts] review for correctness." *State v. Rodrigues*, 2009 UT 62, ¶ 12, 218 P.3d 610.

ANALYSIS

I. Jurisdiction to Impose the Permanent Criminal Stalking Injunction

¶9 Kropf first contends that the district court lacked jurisdiction to reopen his sentence and impose the injunction. Kropf's opening argument is rooted in an analysis of rule 30(b) of the Utah Rules of Criminal Procedure, which was the basis of the court's written order. But in its responsive brief, the State contends that the district court did have jurisdiction for affirmance on the basis not only of rule 30 but also rule 22. The State points out that in its oral ruling, the district court concluded that it had jurisdiction to impose the injunction

pursuant to both rule 30(b) and rule 22(e) of the Utah Rules of Criminal Procedure. While the district court's written order does not cite rule 22 as a basis for its decision,[3] an appellate court may affirm on any basis apparent in the record. *Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158. We conclude that rule 22 best fits the circumstances here. Kropf had the opportunity to address rule 22 below and on appeal after the State raised it, and the core contention of Kropf's rule 30(b) argument—that the stalking statute makes imposition of a permanent criminal stalking injunction discretionary—is the central component of the rule 22 analysis as well.[4]

¶10    Ordinarily, the district court's jurisdiction over a criminal defendant ends upon imposition of a valid sentence and entry of final judgment. *State v. Rodrigues*, 2009 UT 62, ¶ 13, 218 P.3d 610. But "[u]nder rule 22(e) [of the Utah Rules of Criminal Procedure,] a court 'may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time.'" *State v. Candedo*, 2010 UT 32, ¶ 9, 232 P.3d 1008 (quoting Utah R. Crim. P. 22(e)).

> [An illegal sentence is] one which is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, *omits a term required to be imposed by statute*, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize.

---

3. The court instructed the State to include rule 22(e) as a basis for its ruling in the written order, and it is not apparent why there was no reference to that rule in the final order.

4. Because our decision under rule 22 is dispositive, we do not reach Kropf's other arguments that the error was not subject to correction under either rule 30 of the Utah Rules of Criminal Procedure or rule 60(b) of the Utah Rules of Civil Procedure.

*State v. Yazzie*, 2009 UT 14, ¶ 13, 203 P.3d 984 (alteration in original) (emphasis added) (citation and internal quotation marks omitted); *see also State v. Schmidt*, 2015 UT App 96, ¶ 10, 348 P.3d 1206.

¶11    In this case, whether the district court's decision to enter the injunction was the correction of an illegal sentence depends upon the meaning of the portion of the stalking statute addressing permanent criminal stalking injunctions. If the statute required an injunction to be imposed, then the sentence omitted a mandatory term and was illegal. *See Yazzie*, 2009 UT 14, ¶ 13. When interpreting a statute, "our primary goal is to evince the true intent and purpose of the [Utah] Legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation and internal quotation marks omitted); *accord State v. Harker*, 2010 UT 56, ¶ 12, 240 P.3d 780. "A fundamental rule of statutory construction is that statutes are to be construed according to their plain language." *O'Keefe v. Utah State Ret. Bd.*, 956 P.2d 279, 281 (Utah 1998) (citation omitted); *see also Harker*, 2010 UT 56, ¶ 12 (explaining that courts are to "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning") (citation and internal quotation marks omitted). Thus, "[t]he best evidence of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc.*, 2011 UT 50, ¶ 14 (citation and internal quotation marks omitted). "Only if the language of a statute is ambiguous do we resort to other modes of construction." *O'Keefe*, 956 P.2d at 281. Statutory language is ambiguous when "its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis." *Marion Energy, Inc.*, 2011 UT 50, ¶ 15 (citation omitted). Finally, we "read the plain language of [a] statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Harker*, 2010 UT 56, ¶ 12 (alteration in original) (citation and internal quotation marks omitted).

¶12    The stalking statute provides in relevant part,

> (9)(a) A conviction for stalking . . . serves as an application for a permanent criminal stalking injunction limiting the contact between the defendant and the victim.
>
> (b) A permanent criminal stalking injunction shall be issued by the court without a hearing unless the defendant requests a hearing at the time of the conviction. The court shall give the defendant notice of the right to request a hearing.
>
> (c) If the defendant requests a hearing under Subsection (9)(b), it shall be held at the time of the conviction unless the victim requests otherwise, or for good cause.
>
> (d) If the conviction was entered in a justice court, a certified copy of the judgment and conviction . . . must be filed by the victim in the district court as an application and request for a hearing for a permanent criminal stalking injunction.

Utah Code Ann. § 76-5-106.5(9) (LexisNexis 2008). The parties present two competing interpretations of subsection (9)(b). Kropf argues that the word "shall" in the provision, "[a] permanent criminal stalking injunction *shall* be issued by the court without a hearing unless the defendant requests a hearing," does not amount to a mandate to issue the injunction but is rather a constraint on the process for imposing an injunction. *See id.* (emphasis added). Thus, according to Kropf, only if the defendant does not request a hearing must the injunction issue; but if the defendant requests a hearing, the court has discretion to issue the injunction, or not, based on what the parties present. In other words, under Kropf's interpretation, the district court is required to issue a stalking injunction only if the defendant does not request a hearing, but if a hearing is requested, only the hearing is mandatory, not the injunction. The State, on the other hand, argues that the provision should be interpreted as if it

said, "A permanent criminal stalking injunction shall be issued." According to the State, the remainder of the sentence does not qualify the mandatory nature of the injunction; rather, it provides the defendant with the option to require an additional proceeding to address only the details of the injunction's terms. Under this interpretation, the district court must issue a stalking injunction whether or not the defendant requests a hearing. The parties each contend that the plain language of the statute supports its position.

¶13 To support his interpretation, Kropf points to the statute's use of the concept of an "'application'" in subsection (9)(a), which treats the conviction as an application for a permanent criminal stalking injunction. Kropf argues that the word "application" ordinarily means "'request,' 'petition,' or 'a form used in making a request.'" (Quoting *Merriam-Webster's Collegiate Dictionary* 56 (10th ed. 2002).) Kropf thus argues that a conviction merely serves as a *request* that the court consider an injunction. He asserts that the statute's mandatory hearing requirement (once invoked) lends further support to his reading of the statute as discretionary; otherwise, what need would there be for a hearing at all if the outcome—the issuance of the injunction—were foreordained? Rather, by providing for a hearing, Kropf contends, the Utah Legislature must have intended that a stalking injunction be imposed only if the results of the hearing supported the injunction's entry. He thus argues that the stalking statute's plain language "does not mandate the automatic imposition of an injunction but instead . . . only serves as an application initiating the process" of deciding whether or not to impose one.

¶14 The State counters that the stalking conviction's role as an "application" creates no more than a mechanism meant to trigger permanent criminal stalking injunction proceedings. Once the conviction occurs and the "application" is made, the court *must* enter the injunction in accordance with the statute's plain language, "[a] permanent criminal stalking injunction shall

be issued . . . ." *See* Utah Code Ann. § 76-5-106.5(9)(a)–(b). The issuance, however, must be accompanied by limited procedural protections: the defendant must be notified of his or her right to a hearing, and if requested, a hearing must be held. Only at the point when the defendant requests a hearing does the statute provide the district court with a modicum of discretion by itemizing the sort of relief that "[a] permanent criminal stalking injunction *may* grant." *See id.* § 76-5-106.5(10) (emphasis added) (including, among other things, that the defendant stay away from the victim and his or her family as well as the victim's residence, property, school, and workplace and that the defendant refrain from communicating with the victim). According to the State, then, the court has no discretion about whether to issue a permanent injunction; rather, it has discretion only with regard to certain of its terms.

¶15   We agree with the State. Although the "application" language Kropf cites could be read in support of his interpretation, the statutory language, when read as a whole, unambiguously mandates issuance of a permanent criminal stalking injunction once a defendant is convicted of stalking. *See Harker*, 2010 UT 56, ¶ 12 (instructing courts to "interpret [statutory] provisions in harmony with other statutes in the same chapter and related chapters") (citation and internal quotation marks omitted); *see also Marion Energy, Inc.*, 2011 UT 50, ¶ 15 (describing a statute as ambiguous when "its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis"). As the State points out, the legislature provided that "[a] . . . stalking injunction shall be issued by the court" in response to the "application" created by a criminal stalking conviction. *See* Utah Code Ann. § 76-5-106.5(9)(b). The use of "shall" "is usually presumed mandatory and has been interpreted as such previously in this and other jurisdictions." *Board of Educ. of Granite Sch. Dist. v. Salt Lake County*, 659 P.2d 1030, 1035 (Utah 1983); *accord Aaron & Morey Bonds v. Third Dist. Court*, 2007 UT 24, ¶ 14 n.2, 156 P.3d 801. The only qualifier on "shall" is the

provision that the "injunction shall be issued by the court *without a hearing unless the defendant requests a hearing*." Utah Code Ann. § 76-5-106.5(9)(b) (emphasis added). The emphasized language, however, does not mean that the court has discretion to determine whether to impose the permanent criminal stalking injunction upon conviction. Rather, it means simply that if the defendant requests a hearing, a hearing must be held before the injunction issues.

¶16    The purpose for requiring a hearing if the defendant requests one is to give the defendant an opportunity to address the particular terms of the mandatory injunction. The limited purpose of the hearing is apparent from reading the statute with the language of other provisions in the stalking statute. *See Harker*, 2010 UT 56, ¶ 12 (requiring that statutes be read "harmony with other statutes in the same chapter and related chapters") (citation and internal quotation marks omitted). First, a permanent criminal stalking injunction serves only to "limit[] the contact between the defendant and the victim." Utah Code Ann. § 76-5-106.5(9)(a). It does not necessarily preclude all contact under all circumstances. Indeed, another provision gives the court options about the terms of the injunction, stating that "[a] permanent criminal stalking injunction *may* grant the following relief" and then setting out a list of conditions that may be included. *Id.* § 76-5-106.5(10) (emphasis added). The ordinary use of "may" is permissive and thus implicates judicial discretion. *Purcell v. Wilkins*, 195 P. 547, 548 (Utah 1921); *see also Grant v. Utah State Land Bd.*, 485 P.2d 1035, 1036–37 (Utah 1971).

¶17    Included in the list of conditions that "may" be part of the injunction are orders prohibiting contact between the defendant and the victim at the victim's home, school, or place of employment; requiring the defendant to stay away from specified people or places "frequented regularly by the victim"; and prohibiting direct or indirect attempts to communicate by various means with the victim or others associated with the victim. Utah Code Ann. § 76-5-106.5(10). But, for example, if the

defendant and the victim work in proximity to each other or have children together, some limited flexibility in the injunction's terms may be desirable. Thus, it stands to reason that the district court would be provided with some discretion about the scope of a particular injunction. Finally, the juxtaposition of "shall" in reference to the issuance of an injunction and the holding of a hearing with "may" in reference to the scope of the injunction suggests that each term is intended to have its ordinary meaning. By using the mandatory "shall" in one provision and the permissive "may" in another, the legislature appears to have deliberately selected each term to delineate where the district court has discretion and where the court has none. *See Harker*, 2010 UT 56, ¶ 12 (explaining that courts are to "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning") (citation and internal quotation marks omitted). Thus, the court must enter a permanent criminal stalking injunction but has some discretion as to its terms.

¶18 The "application" concept lends further support to this interpretation. By having the conviction serve as an automatic application for an injunction rather than simply imposing the injunction automatically on conviction, the statute provides the defendant, the victim, and the district court an opportunity to address the details of an injunction's terms before the injunction is imposed, while still ensuring that a permanent criminal stalking injunction in some form will issue as a consequence of the conviction. And by containing the injunction requirement within the criminal stalking statute, the legislature ensures that victims are provided with a remedy within the criminal process itself. There is good reason for this approach. A mandatory permanent criminal stalking injunction is an efficient and effective remedy against the threat inherent in the crime of stalking, a threat that is unlikely to have disappeared with the termination of a prison sentence or supervision. The nature of the crime often involves an obsessive and threatening focus that can leave a victim with the kind of long-term anxiety that only a

permanent legal constraint on the stalker can begin to address. Moreover, a criminal stalking injunction offers a permanent remedy that is unavailable through the more costly, complicated, and discretionary process of a civil stalking injunction case, which must be pursued by the victim.[5]

¶19 Our interpretation of "shall" as mandatory finds additional support in the stalking statute's subsequent history. *See Brock v. Pierce County*, 476 U.S. 253, 263 (1986) (explaining that when the legislative history is "consistent with the statutory language and other legislative history, [it] provide[s] evidence of [the legislature's] intent" (citation omitted)). In 2012, the

---

5. To obtain a civil stalking injunction, a victim must "file a verified written petition for a civil stalking injunction against the alleged stalker with the district court." Utah Code Ann. § 77-3a-101(2) (LexisNexis 2012). "If the court determines that there is reason to believe that an offense of stalking has occurred, an ex parte civil stalking injunction *may* be issued . . . ." *Id.* § 77-3a-101(5)(a) (emphasis added). Once an ex parte civil injunction issues, the respondent has ten days to request an evidentiary hearing, which would require the victim to "show by a preponderance of the evidence that stalking . . . has occurred." *Id.* § 77-3a-101(6). At the hearing, the "court may modify, revoke, or continue the injunction." *Id.* § 77-3a-101(7). Should the respondent fail to request a hearing or request a hearing outside of the ten-day period, the "ex parte civil stalking injunction automatically becomes a civil stalking injunction without further notice to the respondent and expires three years from the date of service." *Id.* § 77-3a-101(9). Until it expires, the terms of a civil stalking injunction are subject to modification or dissolution if the petitioner requests it or if the respondent "show[s] good cause." *Id.* § 77-3a-101(10), (13). In contrast, "[a] permanent criminal stalking injunction may be dissolved or dismissed only upon application of the victim." *Id.* § 76-5-106.5(11) (LexisNexis 2008) (current version at *id.* § 76-5-106.5(12) (2012)).

legislature amended the language in subsection (9)(b) to read, "[a] permanent criminal stalking injunction shall be issued by the court at the time of the conviction. The court shall give the defendant notice of the right to request a hearing." Utah Code Ann. § 76-5-106.5(9)(b) (LexisNexis 2012). By grammatically disentangling the requirement to impose the injunction from the defendant's right to a hearing, the legislature has more plainly expressed its intent that the injunction be a mandatory consequence of a stalking conviction. And the 2012 amendment's separation of the two requirements—the injunction and a hearing on the defendant's request—was meant to be a clarification rather than a substantive change from the prior statute. This is apparent from the legislature's description of this change, along with all but one other modification in the 2012 amendments, as simply "technical corrections." Clarification of Stalking Injunctions and Protective Orders, ch. 383, 2012 Utah Laws 2100 (explaining that "[t]his bill allows a court to consider the defendant's parental rights when issuing a stalking injunction; and makes technical corrections"). An amendment is technical or clarifying "when it corrects a discrepancy or merely amplif[ies] . . . how the law should have been understood prior to [the amendment]." *Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 43, 234 P.3d 1105 (alterations and omission in original) (citation and internal quotation marks omitted) (addressing what a clarifying amendment is in the context of deciding whether the amendment was retroactive). Thus, a clarifying amendment generally "alters or explains language already present in the original statute" rather than "add[ing] new language or subsections that did not exist in any form before the amendments were made." *Gressman v. State*, 2013 UT 63, ¶ 17, 323 P.3d 998 (citation and internal quotation marks omitted). Here, because the "technical corrections" to subsection (9)(b) did not modify its meaning but instead simply made that meaning more clear, the plain language of the 2012 version also supports our reading of the 2008 version.

¶20    Kropf, however, points to language in other portions of the amended stalking statute that he argues support his interpretation that a permanent criminal stalking injunction is discretionary. For example, Kropf cites language in subsection (9)(d), which addresses the entry of a permanent criminal stalking injunction after a conviction in justice court. Subsection (9)(d) reads, "[i]f the conviction was entered in a justice court, a certified copy of the judgment and conviction . . . shall be filed by the victim in the district court as an application and request for a hearing for a permanent criminal stalking injunction." Utah Code Ann. § 76-5-106.5(9)(d) (LexisNexis 2012). According to Kropf, this language shows that "a conviction does not automatically trigger the issuance of a permanent stalking injunction" but rather permits the victim to ask the court to grant such relief. However, for the reasons discussed above, we believe that the use of "application" in subsection (9)(d), as it does in subsection (9)(a), refers only to the initiation of the permanent criminal stalking injunction process, the result of which must be the imposition of the injunction. Moreover, the fact that when the conviction arises in justice court, the victim must take the additional step of actually filing an application is merely a reflection of the limited authority of the justice court, which does not have the power to order a permanent stalking injunction, thus requiring the filing of an actual application in the district court, which does.[6]

---

6. Curiously, there does not appear to be any criminal stalking crime that actually falls within the jurisdiction of the justice court, making this provision essentially dormant. *See* Utah Code Ann. § 76-5-106.5(6)–(8) (LexisNexis 2012) (defining stalking as a class A misdemeanor or a second or third degree felony); *id.* § 78A-7-106(1) ("Justice courts have jurisdiction over class B and C misdemeanors, violation of ordinances, and infractions committed within their territorial jurisdiction by a person 18 years of age or older.").

¶21 Kropf also contends that interpreting the stalking injunction as mandatory would render the provisions of the statute that address the degree of conviction "superfluous and nonsensical." For example, subsection (7) defines third degree felony stalking to include both a conviction after the defendant has been "previously convicted of an offense of stalking" and a conviction after the defendant has "violated a permanent criminal stalking injunction." Utah Code Ann. § 76-5-106.5(7)(a), (7)(d). According to Kropf, there is no reason for the legislature to have provided two paths to a conviction for third degree felony stalking if the injunction is mandatory because "a defendant previously convicted of an offense of stalking would necessarily have violated a permanent criminal stalking injunction." (Citation and internal quotation marks omitted.) Kropf's argument, however, assumes that the second offense of stalking must have targeted the same victim. If the defendant is charged with stalking a different victim, there would be no violation of any permanent criminal stalking injunction that would have issued in a prior case. And although a defendant who is again charged with stalking the same victim may be convicted of a third degree felony simply for violating the stalking injunction that was imposed as a mandatory consequence of the prior conviction, it is possible that no such injunction actually issued in a particular case, as this case illustrates—Kropf has twice been convicted of stalking the victim here with nary a criminal stalking injunction to show for it. Further, making a permanent injunction mandatory on conviction provides an important protection for the victim of such crimes: proving violation of a permanent injunction from a prior crime against the same victim is ordinarily much easier than would be the case were the State required to establish all the elements of stalking anew. And that ease of proof provides an added incentive for the stalker to leave the victim alone, thus enhancing the deterrent effect of the injunction and its value to

the victim. Accordingly, we conclude that these provisions do not support Kropf's interpretation of the injunction component as discretionary.[7]

¶22 Finally, Kropf cites subsection (11), which addresses parent-time and custody after an injunction is imposed. That provision reads,

> If the victim and defendant have minor children together, the court may consider provisions regarding the defendant's exercise of custody and parent-time rights while ensuring the safety of the victim and any minor children. *If* the court issues a permanent criminal stalking injunction, but declines to address custody and parent-time issues, a copy of the stalking injunction shall be filed in any action in which custody and parent-time issues are being considered and that court may modify the injunction to balance the parties' custody and parent-time rights.

Utah Code Ann. § 76-5-106.5(11) (LexisNexis 2012) (emphasis added). Kropf contends that in choosing the word "[i]f" to begin the second sentence, rather than "when" (or some other phrase that suggests that imposition of the injunction is mandatory), the legislature must not have intended for "all convictions [to] warrant the imposition of a permanent injunction." Kropf fails to acknowledge, however, that this language was added in 2012 and is not contained within the criminal stalking statute that is

---

7. Kropf makes similar arguments regarding the variations of second degree felony stalking described in subsection (8). *See* Utah Code Ann. § 76-5-106.5(8) (LexisNexis 2012). For the reasons discussed with respect to the third degree felony variations, the provisions relating to second degree felony stalking also do not support Kropf's interpretation.

applicable to Kropf, the 2008 version. But, to the extent that the language may inform the meaning of the 2008 version, it is not as favorable to his position as Kropf contends. In context, it is clear that the legislature used "if" to refer to the possibility that the mandatory injunction did not address parent-time or custody, not the possibility that a criminal stalking injunction had not issued at all. Although the legislature might have said "*when* the court issues a permanent criminal stalking injunction *that* declines to address custody and parent-time issues" or "if the court-*issued* permanent criminal stalking injunction *fails to address* custody and parent-time issues" to more precisely describe the circumstance, the language it did use does not justify an interpretation that renders discretionary the requirement, stated a few sentences earlier in the same statute, that "[a] permanent criminal stalking injunction *shall* be issued by the court at the time of the conviction." *See id.* § 76-5-106.5(9)(b) (emphasis added); *see also State v. Harker*, 2010 UT 56, ¶ 12, 240 P.3d 780 (explaining that statutory provisions are to be read in harmony with each other). Moreover, because the language in subsection (11) does not call into doubt that the injunction requirement is mandatory in the 2012 version of the stalking statute, we cannot infer that it implies that the injunction requirement was discretionary in the 2008 version, which does not contain such language.[8]

---

8. Kropf makes two additional arguments against imposing an injunction. First, Kropf argues that there is one additional fact that supports his interpretation of the injunction requirement as discretionary: issuance of the permanent criminal stalking injunction on the standard form, which requires a finding of good cause. Kropf, however, made this argument for the first time in his reply brief, and that is grounds in itself for not considering the argument. *See State v. Chavez-Espinoza*, 2008 UT App 191, ¶ 10 n.2, 186 P.3d 1023 (explaining that "we will not review an issue first raised in a reply memorandum" because "'a reply memorandum . . . shall be limited to rebuttal of matters

(continued…)

¶23 In sum, the plain language of the stalking statute demonstrates that imposition of a permanent criminal stalking injunction is mandatory upon conviction for stalking. Because of the mandatory nature of the injunction, we conclude that the district court's failure to enter the injunction amounted to an omission of "a term required to be imposed by statute" as a consequence of Kropf's stalking conviction. *See State v. Yazzie*, 2009 UT 14, ¶ 13, 203 P.3d 984 (citation omitted). Accordingly, the district court correctly concluded, once the error was brought to its attention, that there was a basis under rule 22 to correct the judgment to include the injunction. *See* Utah R. Crim. P. 22(e) ("The court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time.").

¶24 Having concluded that rule 22 authorized the district court to enter a permanent criminal stalking injunction, we now consider whether double jeopardy or due process preclude the injunction.

---

(…continued)
raised in the memorandum in opposition'" (omission in original) (quoting Utah R. Civ. P. 7)). But, even considering the merits of this claim, we are not convinced that the standardized form, prepared and utilized for convenience, can overcome the plain language of the statute.

Second, Kropf contends that "it is undisputed that despite [his] two prior stalking convictions he did not have a stalking injunction imposed against him" for either of those convictions. But the fact that Kropf may have benefitted from an oversight in those two cases does not entitle him to the same result in this case, where the error was brought to the attention of the district court and corrected.

## II. Constitutional Issues

### A.    Double Jeopardy

¶25    Kropf contends that imposition of the permanent criminal stalking injunction violated his constitutional right to be free from double jeopardy. Double jeopardy protects a defendant's interest in the finality of a sentence by precluding subsequent prosecutions after acquittal or conviction and multiple punishments for the same offense. *See State v. Rodrigues*, 2009 UT 62, ¶ 36, 218 P.3d 610. According to Kropf, he expected the zero-to-five-year sentence and a fine to be the only possible consequences of the stalking conviction because at sentencing the district court explained that these constituted "the maximum penalties" for the offense and the State failed to request an injunction even after the court invited the parties to discuss any other issues related to sentencing. Thus, Kropf argues, by imposing the injunction, the district court added an additional, unexpected punishment for his conviction, thereby "'upset[ting his] legitimate expectation of finality in his sentence.'" (Quoting *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir. 2005) (citation omitted).) The State responds that "because a criminal stalking injunction is not a criminal punishment" but rather is a measure designed to protect a victim's safety, "double jeopardy does not apply." (Citing *Hudson v. United States*, 522 U.S. 93, 98–99 (1997) ("We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment. The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." (citations and internal quotation marks omitted)).) We conclude that because the injunction was a mandatory consequence of Kropf's conviction and the original sentence thus "omit[ted] a term required to be imposed by statute," *see Yazzie*, 2009 UT 14, ¶ 13 (citation omitted), double jeopardy does not preclude imposition of the injunction.

¶26   The Utah Supreme Court has determined that "[a]s a rule, illegal sentences are void and neither create rights nor impair or affect any rights." *Id.* ¶ 17. "Additionally, because a sentence is illegal, the jurisdiction of the district court continues until a valid sentence is imposed." *Id.* "Double jeopardy is therefore not violated when a judge merely corrects an inadvertently illegally imposed sentence." *Id.* ¶ 18 (citation and internal quotation marks omitted). In this case, the stalking statute required an injunction to be imposed at sentencing as a consequence of the conviction. *See* Utah Code Ann. § 76-5-106.5(9) (LexisNexis 2008). The district court, however, failed to comply with this mandate. Because an illegal sentence includes one that "omits a term required to be imposed by statute," the district court retained jurisdiction to correct the initial oversight and to add the mandatory term to Kropf's sentence. *See Yazzie*, 2009 UT 14, ¶ 13 (citation omitted). In doing so, the court did not disrupt any reasonable expectation of finality because a defendant cannot legitimately expect a sentence that fails to comply with the mandatory terms of the statute. *See id.* ¶¶ 17–18.

¶27   Kropf argues, however, that he had a reasonable expectation of finality in this sentence because he "had not had a stalking injunction imposed against [him] as a result of his two previous stalking convictions." But, as we have discussed, due to the mandatory nature of the injunction, Kropf could not reasonably have expected that no injunction would be imposed in either prior case; rather, Kropf received a sort of unearned windfall in the earlier cases due to the sentencing courts' oversights. *See supra* note 8. Kropf has not explained how such a happenstance, even if repeated twice, establishes a legitimate expectation of finality in this case. Accordingly, we conclude that the district court's imposition of a criminal stalking injunction did not violate Kropf's constitutional right against double jeopardy.

B.     Due Process

¶28    Finally, Kropf contends that the district court deprived him of due process because he "was never given notice" that an injunction could be part of his criminal sentence and the injunction was entered without an evidentiary hearing.

¶29    Due process is not formulaic. *McBride v. Utah State Bar*, 2010 UT 60, ¶ 16, 242 P.3d 769 (noting that "the demands of due process rest on the concept of basic fairness of procedure and demand a procedure appropriate to the case and just to the parties involved" (citation and internal quotation marks omitted)). Its minimum requirements are satisfied, however, when the defendant receives "timely and adequate notice and an opportunity to be heard in a meaningful way." *Id.* (citation and internal quotation marks omitted).

¶30    In this case, Kropf did not receive the required notice of his "right to request a hearing" to occur "at the time of the conviction." *See* Utah Code Ann. § 76-5-106.5(9)(b), (9)(c) (LexisNexis 2008). But once the Petitioner filed a motion to reopen the case to issue the injunction and the court set a hearing on that motion at which Kropf had the opportunity to be heard, the minimum requirements of due process were satisfied. *See McBride*, 2010 UT 60, ¶ 16.

¶31    Kropf nevertheless contends that the hearing he received did not comply with the requirements of the stalking statute. In particular, Kropf argues that because the "hearing was limited to whether the decision to not impose a stalking injunction . . . was an error," he was denied the opportunity "to proffer factual arguments and evidence in opposition of the stalking injunction." We have foreclosed Kropf's claim that his due process rights were violated by the denial of an evidentiary hearing for this purpose with our determination that the injunction is a mandatory component of a sentence for a stalking conviction.

¶32     Moreover, in making his argument that he was denied an evidentiary hearing to oppose imposition of the injunction, Kropf does not contend that he was denied an opportunity to address the *terms* of the injunction. Indeed, on appeal, he neither makes a complaint about the specific terms imposed by the injunction nor describes any evidence regarding such terms that he would have presented had a hearing been held. *Cf. Salt Lake City v. Almansor*, 2014 UT App 88, ¶ 11, 325 P.3d 847 (concluding that the defendant had not established any harm as a result of the court's decision to go forward with trial despite the absence of the defendant's witness because he did "not address the anticipated content of the witness's testimony at all, nor [did] he demonstrate how her testimony would have helped the defense"). Because Kropf does not appeal the specific terms of the injunction entered, we will not consider whether the court deprived him of any due process right when it established the injunction's terms. *See Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("In an instance where the court has appellate jurisdiction, an appellant must allege the lower court committed an error that the appellate court should correct. If an appellant does not challenge a final order of the lower court on appeal, that decision will be placed beyond the reach of further review.").

¶33     Because we have concluded that the district court did not violate Kropf's constitutional rights, we affirm the imposition of the injunction under rule 22 of the Utah Rules of Criminal Procedure.

CONCLUSION

¶34     The 2008 version of the stalking statute mandated imposition of the injunction upon a defendant's conviction and after a hearing, if one was requested. Because the original sentence omitted the injunction, the court correctly exercised its jurisdiction to reopen the sentence to impose the injunction. We also conclude that Kropf was not deprived of his constitutional

rights to be free from double jeopardy and to receive due process. Double jeopardy is not violated when the district court corrects an illegal sentence. The court also afforded Kropf due process by setting a hearing once the Petitioner requested the injunction and allowing Kropf to be heard at that hearing.

¶35   We therefore affirm.

—————