2000 UT App 368

**In the interest of E.H.H., a person under eighteen years of age.**

**M.B. and K.B., Petitioners and Appellees,**

v.

**C.E.H., Respondent and Appellant.**

No. 991034–CA.

Court of Appeals of Utah.

Dec. 21, 2000.

David S. Dolowitz and Frances M. Palacios, Salt Lake City, for Appellant.

D. Miles Holman, Sandy, and Roger F. Baron, Brigham City, for Appellees.

Todd N. Hallock, Logan, Guardian Ad Litem.

Before GREENWOOD, P.J., and BENCH, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 E.H.H.'s mother and stepfather began adoption proceedings by filing a petition to

terminate the parental rights of E.H.H.'s father. The father filed a motion to dismiss the petition for lack of subject matter jurisdiction under 28 U.S.C. § 1738A, the Parental Kidnapping Prevention Act (PKPA). The trial court denied the father's motion to dismiss. The case is before us for interlocutory review of whether the trial court could properly exercise jurisdiction in this case consistently with the PKPA. We hold it could not, as California has jurisdiction over the matter.

## BACKGROUND

¶2 The material facts are not in dispute. E.H.H.'s father and mother were divorced in California on July 21, 1995. The mother was granted sole legal and physical custody of E.H.H., and the father was granted conditional visitation rights.[1] Under the PKPA, California's Superior Court continues to exercise jurisdiction over all matters in this case properly characterized as custody or visitation determinations. *See* 28 U.S.C.A. § 1738A(d) (Supp.2000).

¶3 On June 18, 1999, the mother and her husband filed a petition in Utah's juvenile court for termination of the father's parental rights and for adoption of E.H.H. by the mother's husband. A copy of the petition was served on the father in California, where he still resides. The father moved for dismissal of the petition, claiming it affects custody and visitation and that Utah's courts therefore lack subject matter jurisdiction under the terms of the PKPA.

¶4 The PKPA prevents a court from modifying a prior valid custody or visitation determination made by a court of another state if the prior state continues to have jurisdiction over the case. *See* 28 U.S.C.A. § 1738A (1994 & Supp.2000).[2] The father argued in his motion to dismiss that termination of his parental rights would necessarily amount to a modification of the California court's custody and visitation determinations and that, as

California continues to have jurisdiction in this case, Utah courts are prevented from exercising jurisdiction.

¶5 The trial court denied the father's motion to dismiss, holding that a termination of parental rights is not a custody determination or a visitation determination under the PKPA. The father petitioned this court for interlocutory review of the trial court's denial of his motion to dismiss, and we granted his petition.

## ISSUE AND STANDARD OF REVIEW

■ ¶6 The parties do not dispute that the California court exercised proper jurisdiction under the PKPA in making the initial custody and visitation determinations at the time of the divorce. Nor do the parties dispute that California retains exclusive jurisdiction under the PKPA to modify *custody and visitation* determinations regarding E.H.H. Thus, the only issue before us is whether a proceeding to terminate a party's parental rights constitutes a proceeding to modify a "custody determination or visitation determination" under the PKPA. 28 U.S.C.A. § 1738A(a) (Supp.2000). The interpretation of a statute is a question of law, which we review for correctness, giving no particular deference to the lower court's conclusions. *See In re H.J.*, 1999 UT App 238, ¶15, 986 P.2d 115.

## ANALYSIS

¶7 "Th[e] common thread [running through the jurisprudence of child custody jurisdiction is the] proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter." *In re Adoption of Asente*, 90 Ohio St.3d 91, 734 N.E.2d 1224, 1225 (2000) (adopting the opinion of the Ohio Court of Appeals). With this principle in mind, we undertake our analysis of wheth-

---

1. The California court also granted visitation rights to E.H.H.'s paternal grandparents. A portion of each party's argument addresses the relevance of the grandparents' visitation rights to our resolution of this appeal. The grandparents have not been joined as parties, and our disposition of this appeal does not turn on their visitation

rights. We therefore do not address the grandparents' visitation rights further.

2. The PKPA was last amended in 1998, Act of Nov. 12, 1998, Pub.L. No. 105–374, 112 Stat. 3383–84, prior to the mother's filing of the petition to terminate the father's parental rights.

er the PKPA applies to proceedings to terminate parental rights.

¶ 8 The PKPA prohibits a State from "modify[ing] ... any custody determination or visitation determination made consistently with the provisions of [the PKPA] by a court of another State," with an exception for circumstances not applicable here.[3] 28 U.S.C.A. § 1738A(a) (Supp.2000). The PKPA defines "custody determination" and "visitation determination" as "a judgment, decree or other order of a court providing for the [custody or visitation] of a child." *Id.* § 1738A(b)(3) & (9). The PKPA defines a "modification" as "a custody or visitation determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody or visitation determination concerning the same child." *Id.* § 1738A(b)(5). Thus, Utah courts generally have no jurisdiction to modify, replace, or supercede a prior order of a court of another State "providing for the [custody or visitation] of a child." *Id.* § 1738A(b)(3), (5) & (9).

■ ¶ 9 The Utah Supreme Court has decreed that an order terminating a party's parental rights necessarily modifies prior orders granting that party visitation or custody rights. In *In re R.J.*, 589 P.2d 244 (Utah 1978), the Supreme Court explained that " ' "[t]ermination of parental rights" means the permanent elimination of all parental rights and duties, including residual parental rights and duties.' " *Id.* at 246 (quoting Utah Code Ann. § 78–3a–2(14) (1977)).[4] Those "[r]esidual parental rights and duties include [the] right to reasonable visitation." *Id.* Because termination cuts off all parental rights, including custody and visitation, an order terminating parental rights trumps all prior orders concerning that parent's rights to custody or visitation. Thus, by definition, a termination of parental rights works the ultimate custody and visitation determination as to the party whose rights are terminated. *See Souza v. Superior Court*, 193 Cal.App.3d 1304, 238 Cal.Rptr. 892, 895 (1987) ("Patently, a stepparent adoption, with its potential

for completely terminating the natural father's custodial rights, is a custody-determining procedure and is ... subject to ... the PKPA."); *In re Adoption of Asente*, 734 N.E.2d at 1232 ("We fail to see how a termination of appellants' parental rights ... did not, for all purposes, determine custody of [the child]."); *In re Adoption of N.M.B.*, 764 A.2d 1042 (Pa.2000) ("[I]t is hard to imagine any more of a modification to a custody and visitation determination than to terminate these rights altogether.").

■ ¶ 10 We follow the Supreme Court's decision in *R.J.* and the logic of the cases just cited and hold that under the PKPA, a termination of parental rights unavoidably works a modification of prior custody and visitation determinations. Therefore, a termination in Utah of the father's parental rights would supplant the prior order of the California Superior Court granting the father conditional visitation rights with E.H.H. This is exactly what is prohibited by the PKPA, and thus, the Utah court lacks jurisdiction.

¶ 11 Our conclusion reaffirms the sound policy determinations that prompted Congress's passage of the PKPA. Congress intended by passage of the PKPA to, among other things, "discourage continuing interstate controversies over child custody in the interest of greater stability of [the] home environment and of secure family relationships for the child." *See* Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611, 94 Stat. 3566, 3569 (congressional findings and declaration of purpose). To hold otherwise would be to say that, notwithstanding the Full Faith and Credit Clause, a termination order in one jurisdiction does not affect custody and visitation orders issued previously in another jurisdiction. Thus, petitioners in this case, for example, would have to march back to California, Utah decree in hand, to see if termination here would prompt California to make a change in its undisturbed custody and visitation orders. If the California court were unimpressed, E.H.H.'s father would have no parental

---

3. The exception would be applicable if California "no longer [had] jurisdiction, or [had] declined to exercise such jurisdiction." 28 U.S.C.A. § 1738A(f) (1994).

4. Section 78–3a–2(14) has since been recodified without change as section 78–3a–103(z) (1996).

rights in E .H.H., yet somehow be entitled to visitation with her. Such a holding would only increase the jurisdictional confusion and conflict the PKPA was meant to prevent.

¶ 12 Our decision preserves the PKPA objectives of order and consistency and, to that extent, works in the best interest of E.H.H. by precluding at least one extra, inevitable round of litigation. In so holding, we are not unmindful that the child, her mother, her school, and nearly all of the important relationships in her life are in Utah. Notwithstanding its likely exasperation with E.H.H.'s mother for her violation of its prior orders, we trust the California Superior Court will consider fully the overall best interests of E.H.H. in deciding whether to continue its jurisdiction in this case.[5]

¶ 13 The mother's argument that a termination of parental rights is not a custody determination under the PKPA is based largely on this court's decision in *In re R.N.J.*, 908 P.2d 345 (Utah Ct.App.1995). In *R.N.J.*, we held that under the Utah Uniform Child Custody Jurisdiction Act (Utah UC-CJA), Utah Code Ann. §§ 78–45c–1 to –26 (1992 & Supp.1995), a termination of parental rights is not a custody determination. *See R.N.J.*, 908 P.2d at 348–49. However, we are not bound by *R.N.J.* in this case. *R.N.J.* interprets the Utah UCCJA, and we here interpret the separate and preempting PKPA. *See In re D.S.K.*, 792 P.2d 118, 128 (Utah Ct.App.1990) ("Where the PKPA and the state's version of the UCCJA conflict, the PKPA preempts state law.").

¶ 14 Not only are we not bound by *R.N.J.*, which dealt only with Utah's UCCJA and did not deal with the federally enacted PKPA, we also decline to follow it as persuasive authority. While ordinarily we would be inclined to give the same meaning to similar statutory language appearing in similar contexts and having similar statutory definitions, for two reasons we do not give the PKPA's "custody determination or visitation determination" language the same meaning we gave similar language in *R.N.J. See* 908 P.2d at 348–49 (defining terms "custody determination" and "custody proceeding" as used in the Utah UCCJA).

¶ 15 First, *R.N.J.* fails to cite the Utah Supreme Court's opinion in *R.J.* or to otherwise grapple with the inescapable legal effect of a termination of parental rights as recognized in *R.J.*, i.e., that it necessarily terminates all of that parent's custody and visitation rights. Instead, *R.N.J.*'s analysis focuses on the fact that our statutory scheme provides for termination proceedings in juvenile court and custody proceedings in district court,[6] as well as on the fact that the Utah UCCJA definitions of "child custody determination" and "child custody proceeding" did not, at the time, specifically include termination proceedings. *See R.N.J.*, 908 P.2d at 348–49. While *R.N.J.* is correct that a custody proceeding and a termination proceeding are not the same, a termination proceeding does fundamentally affect both custody and visitation, as explained above.

5. Congress passed the PKPA in the express hope that it would "promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case *in the interest of the child.*" Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611, 94 Stat. 3566, 3569 (congressional findings and declaration of purpose) (emphasis added). E.H.H.'s mother makes persuasive policy arguments suggesting that Utah is the better venue for custody and visitation proceedings regarding E.H.H. Her policy arguments, though compelling, must be addressed to the California Superior Court which may, in its discretion, determine that a Utah court would be better suited to decide this case in the interest of E.H.H. Only upon such a decision by the California Superior Court may Utah courts properly assume jurisdiction. *See* 28 U.S.C.A. § 1738A(f) (1994) (allowing a court of a second state to modify a valid custody determination by the court of a prior state if the second state otherwise has jurisdiction and the prior state has declined to continue to exercise its jurisdiction).

6. It is true that custody determinations in the context of divorce cases remain the province of the district courts, *see* Utah Code Ann. § 30–3–5(3) (Supp.2000); *but see id.* § 78–3a–104(4), while the juvenile courts enjoy jurisdiction over proceedings to terminate parental rights. *See id.* § 78–3a–104(1)(f). At the same time, juvenile courts often decide custody questions in contexts other than divorce, *see, e.g., id.* § 78–3a–311(1), –411(1)(a), while district courts have the power to terminate parental rights in certain circumstances. *See id.* § 78–30–4.16(1)(b) (1996); *In re Adoption of B.O.*, 927 P.2d 202, 205 (Utah Ct. App.1996).

¶ 16 Second, *R.N.J.* has since been overruled by legislation that specifically includes termination proceedings within the Utah UCCJA's definition of "child custody proceeding." *See* 2000 Utah Laws, Ch. 247, § 2; *In re A.M.S.*, 2000 UT App. 182 n. 1, 4 P.3d 95 (acknowledging that *R.N.J.* has been legislatively overruled). It would be bizarre to steadfastly cling to *R.N.J.* as persuasive authority in interpreting the PKPA when that opinion's interpretation of a Utah statute has been countermanded by the very legislature that enacted it.

¶ 17 In sum, because we are not bound by our decision in *R.N.J.*, we would be remiss if we were to embrace it as persuasive authority given that it overlooks binding precedent, makes an incorrect interpretation of law, and has since been legislatively overruled. Rather, we follow the Supreme Court's decision in *R.J.*, which affirmatively states that a termination of parental rights necessarily forecloses future custody and visitation by that parent. Given that fact, one cannot logically say that terminating a father's parental rights does not modify his right to visitation as it existed up until then. On the contrary, it vaporizes it.

## CONCLUSION

¶ 18 The trial court's ruling was incorrect. Because it seeks to terminate all parental rights, a petition to terminate parental rights necessarily implicates the "lesser included rights" of custody and visitation. A termination proceeding is, therefore, a custody and visitation determination under the PKPA. Thus, given California's continuing jurisdiction, Utah courts do not have jurisdiction under the PKPA to consider the mother's termination petition.

¶ 19 Reversed.

¶ 20 I CONCUR: PAMELA T. GREENWOOD, Presiding Judge.

BENCH, Judge (dissenting):

¶ 21 I respectfully dissent.

¶ 22 This court has specifically addressed whether a proceeding to terminate parental rights is a custody determination. *See In re* *R.N.J.*, 908 P.2d 345 (Utah Ct.App.1995). In *R.N.J.*, a panel of this court, which included Judge Orme, unanimously held that a "proceeding involving the termination of a parent's rights and obligations is not a custody proceeding." *Id.* at 348. In the present case, the juvenile court followed controlling precedent and ruled that "[w]here 'custody determination' and 'modification' are similarly defined in [the] PKPA and Utah's UCCJA, and the Utah Court of Appeals has already ruled in *R.N.J.* that a termination proceeding is not a 'custody proceeding' or 'modification' as defined by Utah's UCCJA," then "neither is a termination proceeding a 'custody proceeding' nor modification under [the] PKPA." I agree with the rationale of the juvenile court. When this 1999 petition was filed, Utah was clearly not precluded from exercising subject-matter jurisdiction over the proceeding to terminate the father's parental rights.

¶ 23 While this appeal was pending, however, the Utah Legislature amended the Utah UCCJA to include termination of parental rights in the definition of a child custody proceeding. *See* Utah Code Ann. § 78–45c–102(4) (Supp.2000) (effective July 1, 2000). While the revised Utah UCCJA would preclude Utah from exercising subject-matter jurisdiction over any termination petitions filed after the effective date of the amendment, "[a]s a general rule, amendments to statutes are not retroactive." *National Parks & Cons. Ass'n v. Board of State Lands*, 869 P.2d 909, 912 (Utah 1993). More specifically, "[o]nce a court has acquired jurisdiction of a case, jurisdiction is not extinguished by subsequent legislative action." *Id.* Thus, the 2000 amendment defining a child custody proceeding to include a proceeding to terminate parental rights, *see* Utah Code Ann. § 78–45c–102(4) (Supp. 2000), could not divest the Utah court of jurisdiction over this 1999 case. *See, e.g.,* *National Parks & Cons. Ass'n,* 869 P.2d at 912. Therefore, under *R.N.J.,* Utah has subject-matter jurisdiction over the present petition to terminate the father's parental rights.

¶ 24 The majority, however, attempts to sidestep *R.N.J.* by questioning whether it grappled with a similar legal issue, and by

arguing that *In re R.J.*, 589 P.2d 244 (Utah 1978) is the binding precedent.

¶ 25 As to whether the legal issues are similar enough for this court to be bound by *R.N.J.*, the difference between the two cases is that *R.N.J.* dealt with jurisdiction under the Utah UCCJA, while this case deals with jurisdiction under the PKPA. However, for our purposes, there is no real distinction between the two acts because the PKPA was intended "to provide nationwide enforcement of custody orders made in accordance with the terms of the UCCJA." *Thompson v. Thompson*, 484 U.S. 174, 181, 108 S.Ct. 513, 517, 98 L.Ed.2d 512 (1988). *See also* Annotation, *Child Custody: When Does State That Issued Previous Custody Determination Have Continuing Jurisdiction Under Uniform Child Custody Jurisdiction Act (UCCJA) Or Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A,* 83 A.L.R.4th 742 (1991).

¶ 26 As to the majority's claim that *R.J.* controls, that case is easily distinguished. *R.J.* merely addressed the effect that terminating parental rights has on visitation. *See R.J.*, 589 P.2d at 244–46. Unlike this case and *R.N.J.*, *R.J.* did not purport to address jurisdiction between two states and did not deal with custody. For obvious reasons, none of the parties cites *R.J.* Additionally, in the twenty-two years since *R.J.* was decided, the whole statutory framework for dealing with child welfare issues has dramatically changed. I therefore struggle to see how *R.J.* is relevant to the issue now before us, let alone binding.[1] As I see it, *R.N.J.* is the only binding precedent.

¶ 27 Thus, as it stands, we have only two options. First, because this court definitively held in *R.N.J.* that a termination proceeding is not a custody proceeding, *see* 908 P.2d at 348, we could affirm. Second, if we can determine that *R.N.J.* was "'clearly erroneous or conditions have changed so as to render the prior decision inapplicable,'" we

could overrule *R.N.J.* and reverse. *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) (citation omitted).

¶ 28 Although I frankly would not have concurred with the panel in *R.N.J.*, I cannot, in good faith, say that the decision is clearly erroneous. In support of its holding in *R.N.J.*, this court reasoned that: (1) the UCCJA did not specify whether a termination proceeding was also a custody proceeding; (2) Utah's statutory scheme separates termination of parental rights proceedings from custody proceedings; (3) Utah's more specific Termination of Parental Rights Act prevails over the more general provisions of the UCCJA; and (4) Utah's appellate courts have kept separate the concepts of child custody and termination of parental rights. *See In re R.N.J.*, 908 P.2d at 348–49. The majority opinion does not even attempt to explain how this rationale is clearly erroneous.

¶ 29 Likewise, we cannot say that conditions have changed in the last four years so as to render *R.N.J.* inapplicable. As explained above, the fact that *R.N.J.* was subsequently overruled by statute does not create the requisite change in conditions rendering *R.N.J.*'s result inapplicable. The new statute simply cannot extinguish jurisdiction over a pending case. *See National Parks & Cons. Ass'n,* 869 P.2d at 912.

¶ 30 Thus, in my view, stare decisis mandates that we follow *R.N.J.* and affirm the juvenile court decision in this case. *See Menzies,* 889 P.2d at 399 n. 3. (stating horizontal stare decisis requires "each panel to observe the prior decisions of another [panel]"). Accordingly, I dissent.

---

1. If *R.J.* is relevant to the issue in this case, then it would have been just as relevant when Judge Orme and the other panel members decided *R.N.J.*, yet no mention was made of *R.J.*