**2026 UT App 43**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
UMAR AKEEM THALAB,
Appellant.

Opinion
No. 20240351-CA
Filed March 26, 2026

Third District Court, Salt Lake Department
The Honorable Linda M. Jones
No. 171909460

Lori J. Seppi, Attorney for Appellant

Derek E. Brown and Joshua J. Prince,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

TENNEY, Judge:

¶1     Umar Thalab appeals the denial of a motion to expunge his conviction for attempted stalking. This denial was based, in part, on the district court's conclusion that, at the time of Thalab's sentencing in 2017, the sentencing court violated a statutory obligation by not issuing a permanent criminal stalking injunction. For the reasons set forth below, we agree with the district court. We therefore affirm.[1]

---

1. As indicated, this appeal focuses on a determination by the district court in 2023 that the court should have imposed a permanent criminal stalking injunction at Thalab's sentencing in

(continued…)

BACKGROUND

*Charge and Sentencing*

¶2      In early September 2017, Thalab was charged with one count of stalking, a third-degree felony. This charge was based on conduct that occurred between July and September 2017. At a hearing later that month, Thalab pled guilty to attempted stalking, a class A misdemeanor.

¶3      At the sentencing hearing in November 2017, the sentencing court ordered Thalab to serve 365 days in jail with 302 days suspended and credit for 63 days served. The court also ordered Thalab to serve 24 months of probation. During this hearing, the parties and the court discussed a temporary civil stalking injunction that was in place at the time. At the close of that discussion, the sentencing court did not issue a permanent criminal stalking injunction against Thalab.

¶4      Thalab completed all the conditions of his probation, and in October 2018, he was approved for early termination of probation. The court also later granted Thalab's motion to reduce his conviction to a class B misdemeanor.

---

2017. We note here that the case was transferred during the intervening years to a different judge. And although both decisions occurred within the same criminal case, for clarity, we'll generally refer to the court in 2017 as "the sentencing court," and the court in 2023 as "the district court."

Also, the injunction at issue is statutorily referred to as a "permanent criminal stalking injunction." Various courts (including the district court here and Utah appellate courts in past decisions) have employed different shorthands for this phrase, and we'll generally leave those untouched.

*Expungement Proceedings*

¶5      In May 2023, Thalab filed a petition to expunge his attempted stalking conviction. The State opposed this petition, arguing that the victim had been "statutorily entitled to a permanent stalking injunction at the time of . . . Thalab's conviction and, had one been issued, . . . Thalab would be statutorily ineligible for an expungement." Contemporaneous with this opposition, the State filed a motion to correct Thalab's sentence. The State advanced two rationales for this motion. First, the State argued that under the statutory scheme in effect at the time of sentencing (and, of note, under the interpretation of that statutory scheme set forth in *State v. Kropf*, 2015 UT App 223, 360 P.3d 1), the sentencing court had been legally required to impose a permanent criminal stalking injunction. In the State's view, if "a permanent criminal stalking injunction was not issued in this case," then the sentencing court had issued an illegal sentence that must be corrected pursuant to rule 22(e) of the Utah Rules of Criminal Procedure. Second, the State alternatively argued that the sentencing court had intended to issue a permanent criminal stalking injunction but that "a clerical error prevented the order from being uploaded into the court record."

¶6      Thalab opposed the State's motion to correct the sentence. With respect to the State's rule 22(e) argument, Thalab asserted that a permanent criminal stalking injunction was not mandatory in 2017, so the sentence was not illegal. And with respect to the State's clerical error argument, Thalab asserted that there was no indication that the sentencing court had intended to issue a permanent criminal stalking injunction but that the injunction had somehow not been properly issued.

¶7      At a hearing on the State's motion to correct, the district court agreed with the State that it was "appropriate" to "correct an illegal sentence under Rule 22(e)." In the court's view, the statute that was in effect at the time of sentencing required the

court to impose a permanent criminal stalking injunction, so the failure to do so "amounted to the omission of a term required to be imposed by statute." The district court then set a hearing to address the terms of the injunction that would be issued and to also resolve Thalab's expungement petition.

¶8 At that subsequent hearing, the district court reiterated its conclusion that Thalab's conviction required a "mandatory permanent stalking injunction" under the statute that was in effect at the time of sentencing. In addition, the court stated its view that the sentencing court had "expressly intended to enter a permanent stalking injunction" but that the injunction had not been entered for reasons that were "unclear." In this sense, the court appeared to accept both of the State's contentions—namely, that a permanent criminal stalking injunction should now be issued to correct either (1) an illegal sentence or (2) a clerical error. Having made this decision, the court explained the terms of the injunction to Thalab, and Thalab expressed his understanding of its terms. The court then officially issued the permanent criminal stalking injunction.

¶9 The court then turned to Thalab's petition for expungement. The court noted that a petitioner is statutorily ineligible for expungement "if there is a criminal protective order or a criminal stalking injunction in effect for the case." Because this was now the case, the court denied Thalab's petition.

ISSUES AND STANDARDS OF REVIEW

¶10 On appeal, Thalab first challenges the district court's decision to correct his sentence and issue a permanent criminal stalking injunction. To the extent that this ruling turned on the court's interpretation of rule 22(e), our review is for correctness. *See State v. Wynn*, 2017 UT App 211, ¶ 11, 407 P.3d 1113. And to the extent that this ruling turned on questions of statutory

interpretation, our review is also for correctness. *See State v. Kropf*, 2015 UT App 223, ¶ 7, 360 P.3d 1.

¶11 Thalab next argues that the court erred in denying his petition for expungement. In this context, we "review the district court's underlying factual findings for clear error" and "its legal determinations for correctness." *State v. Malo*, 2020 UT 42, ¶ 14, 469 P.3d 982.

ANALYSIS

I. Motion to Correct an Illegal Sentence

¶12 A district court's jurisdiction over a criminal defendant ordinarily "ends upon imposition of a valid sentence and entry of final judgment." *State v. Kropf*, 2015 UT App 223, ¶ 10, 360 P.3d 1. Rule 22(e) of the Utah Rules of Criminal Procedure "governs challenges to illegal sentences," however, and it sets out certain circumstances in which "a court must correct a convicted criminal defendant's sentence." *State v. Mullins*, 2025 UT 57, ¶¶ 11, 15, — P.3d —. Of note for this appeal, rule 22(e)(1)(F) states that a court "must correct a sentence when the sentence imposed . . . omits a condition required by statute." And rule 22(e)(3) further provides that a motion to correct a sentence under this subsection "may be filed at any time."

¶13 Here, the district court concluded that Thalab's sentence was illegal because under the relevant version of Utah Code section 76-5-106.5 (the Stalking Statute), the sentencing court was "required to issue a permanent stalking injunction at the time of conviction." Thalab challenges this conclusion on appeal, arguing that issuance of a permanent criminal stalking injunction was not statutorily mandated at the time but was instead subject to the discretion of the district court. We disagree.

¶14 At the time of Thalab's conviction, the Stalking Statute provided, in relevant part, as follows:

> (9)(a) The following serve as an application for a permanent criminal stalking injunction limiting the contact between the defendant and the victim:
>
>> (i) a conviction for:
>>
>>> (A) stalking; or
>>>
>>> (B) attempt to commit stalking; . . .
>
> . . . .
>
> (b) A permanent criminal stalking injunction shall be issued by the court at the time of the conviction. The court shall give the defendant notice of the right to request a hearing.

Utah Code § 76-5-106.5(9)(a)–(b) (2017).

¶15 The question here is whether, under this statute, imposition of a permanent criminal stalking injunction was mandatory. This issue was squarely presented to this court in *Kropf*, so we'll begin our analysis there.[2]

---

2. As something of an upfront guide for the reader, we note that our decision in *State v. Kropf*, 2015 UT App 223, 360 P.3d 1, interpreted a 2008 version of the Stalking Statute, and in the course of our analysis, we also discussed certain amendments that had been made to that statute in 2012. As will be discussed later in this opinion, the legislature made more changes to that statute that took effect in early 2017 (and, thus, before Thalab's sentencing), as well as yet more changes to the statute in 2020 that

(continued…)

A.     *State v. Kropf*

¶16     Kropf pled guilty in 2010 to stalking, and the district court did not issue a permanent criminal stalking injunction at Kropf's sentencing. *See Kropf*, 2015 UT App 223, ¶ 2. This came to the attention of the district court a few years later when the victim of Kropf's stalking asked the court to impose a permanent criminal stalking injunction against him. *See id.* ¶ 3. The victim asserted that the version of the Stalking Statute in effect at the time of Kropf's sentencing "provide[d] for permanent criminal stalking injunctions for victims of the crime of stalking to be automatically imposed upon conviction," and the victim further asserted that the court's "failure to enter the injunction . . . resulted in Kropf receiving an illegal sentence, which the court had the authority to correct under rule 22 of the Utah Rules of Criminal Procedure." *Id.* (quotation simplified). The district court agreed and corrected Kropf's sentence accordingly, thereby issuing a permanent criminal stalking injunction. *See id.* ¶ 5.

¶17     Kropf challenged that decision on appeal, but we affirmed. *See id.* ¶ 1. We held that "the plain language of the [S]talking [S]tatute demonstrate[d] that imposition of a permanent criminal stalking injunction [was] mandatory upon conviction for stalking." *Id.* ¶ 23. The crux of our decision was a textual analysis of subsection (9)(b) from the 2008 version of the statute, which was the version that controlled Kropf's case. *See id.* ¶¶ 3 n.1, 12, 15–17. Subsection (9)(b) of that version of the statute read:

> A permanent criminal stalking injunction shall be issued by the court without a hearing unless the

moved some key provisions to a different statute entirely. Our references to "the Stalking Statute" are intended to refer to section 76-5-106.5 generally, and where warranted, we'll note through either textual cues or citations which version of the statute we're discussing at any particular point.

> defendant requests a hearing at the time of the conviction. The court shall give the defendant notice of the right to request a hearing.

Utah Code § 76-5-106.5(9)(b) (2008). We stressed that as a rule of ordinary usage, the word "shall" "is usually presumed mandatory." *Kropf*, 2015 UT App 223, ¶ 15 (quotation simplified). We then concluded that this language "unambiguously mandate[d] issuance of a permanent criminal stalking injunction once a defendant [was] convicted of stalking." *Id.*

¶18   In doing so, we acknowledged but rejected several of Kropf's arguments to the contrary. First, Kropf argued that "the word 'shall'" did not actually "amount to a mandate to issue the injunction" but was instead "a constraint on the *process* for imposing an injunction." *Id.* ¶ 12 (emphasis added). Thus, in Kropf's view, the district court was "required to issue a stalking injunction only if the defendant" did "not request a hearing," but if a hearing was requested, "only the hearing [was] mandatory, not the injunction." *Id.* We rejected that argument, however, concluding that the only qualifier on "shall" in the version of the Stalking Statute in effect at the time was "the provision that the 'injunction shall be issued by the court *without a hearing unless the defendant requests a hearing.*'" *Id.* ¶ 15 (quoting Utah Code § 76-5-106.5(9)(b) (2008), emphasis added by *Kropf*). In our view, the emphasized language did "not mean that the court" had "discretion to determine whether to impose the permanent criminal stalking injunction upon conviction." *Id.* Rather, it meant "simply that if the defendant request[ed] a hearing, a hearing must be held before the injunction issue[d]." *Id.*

¶19   Second, Kropf also pointed to subsection (9)(a), which stated that a "conviction for stalking . . . serves as an application for a permanent criminal stalking injunction." Utah Code § 76-5-106.5(9)(a) (2008). Kropf argued that "the word application ordinarily means request, petition, or a form used in making a

request" and, thus, that the statute contemplated that "a conviction merely serve[d] as a *request* that the court consider an injunction" or "as an application initiating the process of deciding whether or not to impose one." *Kropf*, 2015 UT App 223, ¶ 13 (quotation simplified, emphasis in original). But we rejected this argument as well. We acknowledged that "the 'application' language Kropf cite[d] could be read in support of his interpretation," but we nevertheless concluded that when the statutory language was "read as a whole," it "unambiguously mandate[d] issuance" of the permanent criminal stalking injunction. *Id.* ¶ 15. In doing so, we pointed to another provision—subsection (10)—that gave "the court options about the terms of the injunction." *Id.* ¶ 16; *see also* Utah Code § 76-5-106.5(10) (2008) (stating that "[a] permanent criminal stalking injunction may grant the following relief" and then setting out a list of conditions that may be included). We held that subsection (10), read in connection with subsection (9)(b), showed that while "the court must enter a permanent criminal stalking injunction," it had "some discretion as to its terms." *Kropf*, 2015 UT App 223, ¶ 17. Thus, contrary to Kropf's assertions, we concluded that the "'application' concept" was still consistent with the mandatory language in subsection (9)(b). *Id.* ¶ 18. In our view, "[b]y having the conviction serve as an automatic application for an injunction rather than simply imposing the injunction automatically on conviction," the Stalking Statute provided "the defendant, the victim, and the district court an opportunity to address the details of an injunction's terms before the injunction [was] imposed, while still ensuring that a permanent criminal stalking injunction in some form [would] issue as a consequence of the conviction." *Id.*

¶20 Third, Kropf pointed to certain provisions from the 2012 amendments to the Stalking Statute, arguing that these amendments supported his contention that a permanent criminal stalking injunction was discretionary. *See id.* ¶¶ 20–22. Kropf initially cited language in the 2012 version of subsection (9)(d),

which read, "If the conviction was entered in a justice court, a certified copy of the judgment and conviction . . . shall be filed by the victim in the district court as an application and request for a hearing for a permanent criminal stalking injunction." Utah Code § 76-5-106.5(9)(d) (2012). Kropf argued that this language showed "that a conviction [did] not automatically trigger the issuance of a permanent stalking injunction but rather permit[ted] the victim to ask the court to grant such relief." *Kropf*, 2015 UT App 223, ¶ 20 (quotation simplified). But we again disagreed. We reasoned that "the use of 'application' in subsection (9)(d) . . . refer[red] only to the initiation of the permanent criminal stalking injunction process, the result of which must be the imposition of the injunction." *Id.* We also concluded that subsection (9)(d)'s reference to "the fact that when the conviction arises in justice court, the victim must take the additional step of actually filing an application" was "merely a reflection of the limited authority of the justice court, which does not have the power to order a permanent stalking injunction, thus requiring the filing of an actual application in the district court, which does." *Id.*

¶21 Finally, Kropf cited subsection (11), which was also added in 2012, and which addressed parent-time and custody after a permanent criminal stalking injunction was issued. *See id.* ¶ 22. That provision stated, in relevant part:

> If the court issues a permanent criminal stalking injunction, but declines to address custody and parent-time issues, a copy of the stalking injunction shall be filed in any action in which custody and parent-time issues are being considered and that court may modify the injunction to balance the parties' custody and parent-time rights.

Utah Code § 76-5-106.5(11) (2012). Kropf argued that because subsection (11) used the word "if . . . rather than when (or some other phrase that suggests that imposition of the injunction is

mandatory), the legislature must not have intended for all convictions to warrant the imposition of a permanent injunction." *Kropf*, 2015 UT App 223, ¶ 22 (quotation simplified). We rejected this argument as well. We first noted that "this language was . . . not contained within the [Stalking Statute] that [was] applicable to Kropf, the 2008 version." *Id.* But we nevertheless then rejected the argument on its own terms, concluding that even if this language could somehow "inform the meaning of the 2008 version" of the Stalking Statute, it was "clear that the legislature used 'if' to refer to the possibility that the mandatory injunction did not address parent-time or custody, not the possibility that a criminal stalking injunction had not issued at all." *Id.*

¶22 In light of all of this, we concluded that the plain language of the Stalking Statute demonstrated that the imposition of a permanent criminal stalking injunction was mandatory upon a conviction for stalking. *See id.* ¶ 23. We accordingly held that the sentencing court's failure "to enter the injunction amounted to an omission of a term required to be imposed by statute" and that, as a result, the district court had "correctly concluded . . . that there was a basis under rule 22 to correct the judgment to include the injunction." *Id.* (quotation simplified).

B. Thalab's Appeal

¶23 Thalab's appeal raises the same broad question under the same statutory scheme—whether a permanent criminal stalking injunction is mandatory at the time of sentencing. And Thalab makes many of the same arguments that were raised in *Kropf*. Like Kropf, for example, Thalab argues that subsection (9)(a)'s use of the word "application" indicates that the district court has discretion as to whether to issue a permanent criminal stalking injunction. Like Kropf, Thalab argues that the use of the word "shall" in subsection (9)(b) only imposes "a timing requirement" and only refers to the court's mandate to provide a hearing if a hearing is requested. And like Kropf, Thalab argues that

subsection (11)'s use of the word "if" indicates that a permanent criminal stalking injunction is discretionary.

¶24 On its face, *Kropf* is thus clearly applicable to these questions. "Stare decisis dictates that the first decision by a court on a particular question of law governs later decisions by the same court," *State v. Garcia-Lorenzo*, 2022 UT App 101, ¶ 42, 517 P.3d 424 (quotation simplified), and it's established in Utah that "horizontal stare decisis requires that a court of appeals follow its own prior decisions," *Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2017 UT App 135, ¶ 14, 402 P.3d 130 (quotation simplified). As a result, *Kropf* controls unless Thalab persuades us that it's either distinguishable or that it should be overruled. Thalab chooses the latter path, and he attempts to do so on two fronts: first, he asks us to overrule *Kropf* ourselves; and second, he argues that *Kropf* has been legislatively abrogated. We address each argument in turn.

1. Judicial Overruling

¶25 "Because stare decisis is so important to the predictability and fairness of a common law system, we do not overrule our precedents lightly." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553 (quotation simplified). "Before we will cast aside our caselaw, a party must address: (1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Burton v. Chen*, 2023 UT 14, ¶ 51, 532 P.3d 1005 (quotation simplified). The first factor is concerned with "the correctness of the precedent," while the second factor requires us to "assess the practical effect of the precedent." *Garcia-Lorenzo*, 2022 UT App 101, ¶ 45. A party arguing for the overruling of precedent "must demonstrate that both of these factors favor overruling"; thus, where one "factor[] is not met, we need not discuss the other." *In re Discipline of Bowen*, 2021 UT 53, ¶¶ 70, 84 n.20, 500 P.3d 788.

¶26    Here, we need only address the first factor. In the statutory interpretation context, this factor requires us to "consider whether the prior interpretation is reasonable given the statutory framework in existence at that time." *State v. Robertson*, 2017 UT 27, ¶ 31, 438 P.3d 491 (quotation simplified). Thalab makes four main arguments as to why he believes our interpretation of the Stalking Statute was so incorrect that it should now be overruled: (1) "*Kropf* did not employ the ordinary meaning of the word 'application' in subsection (9)(a) or (9)(d)"; (2) *Kropf* "overlooked the plain meaning of the word 'unless'" in subsection (9)(b) and "interpreted this provision as if it had no qualifier at all"; (3) "*Kropf* failed to employ the ordinary meaning [of] the word 'may'" in subsection (10); and (4) "*Kropf* overlooked the due process concerns of denying a defendant a meaningful hearing before imposing a permanent criminal stalking injunction."

¶27    But each of these arguments echoes—if not outright replicates—an argument that we specifically addressed and rejected in *Kropf*. *See* 2015 UT App 223, ¶¶ 13, 15, 18 (addressing and rejecting the argument regarding the word "application" in subsection (9)(a)); *id.* ¶¶ 12, 15–17 (addressing and rejecting the argument regarding the word "shall" in subsection (9)(b)); *id.* ¶¶ 16–17 (employing the ordinary meaning of the word "may" in subsection (10) to indicate discretion and juxtaposing such use there with the mandatory "shall" in subsection (9)(b)); *id.* ¶¶ 28–33 (addressing and rejecting the contention that Kropf was deprived of due process). As explained below, Thalab has not persuaded us that our prior conclusions were so incorrect or unreasonable that they should now be overturned.

¶28    First, in *Kropf*, we agreed that "the 'application' language Kropf cite[d] could be read in support of his interpretation," but we then concluded that when considering "the statutory language . . . as a whole"—including, most essentially, subsection (9)(b)—the Stalking Statute "unambiguously mandate[d] issuance of a permanent criminal stalking injunction once a defendant [was]

convicted of stalking." *Id.* ¶ 15. We're not persuaded that, as Thalab now contends, *Kropf* failed to employ the ordinary meaning of the word "application." Rather, in our view, we determined that "the context of [the whole] statute . . . eliminate[d] [a] potential interpretation[] of [that particular] statutory phrase" that might have otherwise indicated discretion. *Robertson*, 2017 UT 27, ¶ 32. This conclusion was reasonable at the time, and it remains so now.

¶29   Second, contrary to Thalab's assertion, our decision in *Kropf* did acknowledge that the word "unless" functioned as a qualifier on the word "shall" in subsection (9)(b). *See* 2015 UT App 223, ¶ 15. But we then concluded that the qualifying effect of the word "unless" did not alter the fact that a permanent criminal stalking injunction "shall" be imposed in any given case. *See id.* And we instead determined that the word "unless" merely set forth two possible scenarios upon conviction: (1) an injunction shall be imposed without a hearing if one is not requested by the defendant or (2) an injunction shall be imposed with a hearing if one is requested by the defendant. *See id.* Thalab has failed to convince us that this interpretation was not reasonable.[3]

---

3. In connection with this point, Thalab argues that "[i]f issuing a permanent injunction was mandatory, the hearing permitted by the statute would be rendered practically meaningless." But we're not convinced this would be the case. As the State points out, even if the Stalking Statute is read to impose a requirement for a permanent criminal stalking injunction, there's still reason to afford the defendant a hearing. After all, the court retains some discretion as to the scope and terms of the injunction. And we made this very point in *Kropf*. *See* 2015 UT App 223, ¶ 16 ("The purpose for requiring a hearing if the defendant requests one is to give the defendant an opportunity to address the particular terms of the mandatory injunction.").

(continued…)

¶30 Third, we are also not convinced that, in *Kropf*, we failed to employ the ordinary meaning of the word "may" in subsection (10). Again, any analysis of this subsection must be viewed in the context of the statute as a whole. *See LeBeau v. State*, 2014 UT 39, ¶ 20, 337 P.3d 254 ("[W]e read the plain language of the statute as a whole . . . ."). The reason that we addressed subsection (10) in *Kropf* was to juxtapose its use of the word "may" with subsection (9)(b)'s use of the word "shall." *See id.* ¶¶ 16–17. We specifically noted that "each term is intended to have its ordinary meaning." *Id.* ¶ 17. And we acknowledged that the "ordinary use of 'may' is permissive." *Id.* ¶ 16. Even so, we then said that the reason we were not concluding that subsection (10) made the imposition of an injunction discretionary was that subsection (10) made no reference to the *imposition* of an injunction—rather, subsection (10) was concerned only with the *scope* and *terms* of the injunction. *See id.* ¶¶ 16–17.

¶31 Finally, in *Kropf*, we addressed Kropf's due process concerns at length. *See id.* ¶¶ 28–33. Thalab makes no meaningful effort to address our reasoning there, let alone explain why it was not reasonable. We accordingly see no reason to overrule this aspect of this decision or the conclusions that flow from it.

¶32 In sum, we're not persuaded that we should overrule *Kropf* based on any flaw in its reasoning, and our reluctance to do so is

---

Having considered the matter anew in this appeal, we're still not persuaded that, just because the defendant is entitled to a hearing, this can only mean that issuance of a permanent criminal stalking injunction is discretionary. By way of loose analogy, we note that some criminal offenses carry mandatory sentences. Yet even so, a defendant is entitled to a sentencing hearing at which he or she has the right to allocution. In this sense, even though the end result may be mandatory, the hearing can serve other purposes. In our view, something of a similar dynamic is in play in this context as well.

particularly warranted given the important interests served by stare decisis. We therefore decline Thalab's invitation to overrule that decision ourselves.

2.     Legislative Abrogation

¶33     Because the legislature has power to enact a statute, it also has power to amend a statute in such a way that may abrogate or essentially overrule a judicial decision that has interpreted it. We've recognized this before, holding that courts should not "steadfastly cling to [a prior opinion] as persuasive authority . . . when that opinion's interpretation of a Utah statute has been countermanded by the very legislature that enacted it." *In re E.H.H.*, 2000 UT App 368, ¶ 16, 16 P.3d 1257; *see also Patterson v. Patterson*, 2011 UT 68, ¶ 37, 266 P.3d 828 ("It is axiomatic that our precedent must yield when it conflicts with a validly enacted statute."); *State v. Chaney*, 1999 UT App 309, ¶ 48, 989 P.2d 1091 (noting that caselaw that was "inconsistent" with a particular statute had "been legislatively overruled"). Thus, when caselaw "directly conflicts" with subsequent statutory amendments, that caselaw "must give way to the statute." *Patterson*, 2011 UT 68, ¶ 37.

¶34     Here, Thalab argues that *Kropf* was legislatively abrogated by two amendments to the Stalking Statute from 2012, another amendment from 2017, and yet another from 2020. We address each in turn.

¶35     **2012 Amendments.** As discussed above, *Kropf* was issued in 2015. And although the sentencing there had occurred in 2010, our decision discussed several provisions from the 2012 amendments. This sequence presents something of a conceptual hurdle for Thalab, insofar as he's arguing that *Kropf* was legislatively abrogated by a statute that *predated it* and that was even discussed in the opinion itself. While acknowledging this potential problem, Thalab nevertheless maintains that the

provisions he points to in this appeal were not adequately considered by *Kropf*. We're not convinced.

¶36    Thalab first points to amendments that were made in 2012 to subsection (10). *Compare* Utah Code § 76-5-106.5(10) (2008) ("A permanent criminal stalking injunction may grant the following relief . . . ."), *with id.* § 76-5-106.5(10) (2012) ("A permanent criminal stalking injunction shall be issued by the district court granting the following relief where appropriate . . . ."). Thalab argues that the "2012 change put the court in the driver's seat" because adding the phrase "'where appropriate' indicates discretion." But we disagree with the contention that, taken as a whole, this amendment conflicts with the overall interpretation of the Stalking Statute that we advanced in *Kropf*. Thalab focuses on the addition of the phrase "where appropriate" to subsection (10), but we think it's significant that the legislature also added the phrase "shall be issued," which reinforces the overall notion that the injunction was mandatory. Moreover, we believe that Thalab's argument might have more weight if the phrase "where appropriate" had followed the phrase "shall be issued" (i.e., if the amended statute had read, "A permanent criminal stalking injunction shall be issued by the district court where appropriate . . . ."). But this is not what the legislature did. Instead, the phrase "where appropriate" comes after the phrase "granting the following relief," after which subsection (10) listed several kinds of provisions that might be included in the injunction. *See id.* § 76-5-106.5(10) (2012). And some of these provisions were either vague or outright discretionary in nature. Subsection (10)(c), for example, allowed a court to impose "any other orders the court consider[ed] necessary to protect the victim and members of the victim's immediate family or household." *Id.* § 76-5-106.5(10)(c) (2012). Taken together, this sequence suggested that the phrase "where appropriate" was a reference to the court's discretion in determining the type of relief that could be included in the injunction, not whether the injunction should be imposed at all.

¶37 Thalab next points to subsection (11), which was a provision that was added to the statute in 2012 that addressed the interplay between a permanent criminal stalking injunction on the one hand and custody and parent-time rights on the other. *See id.* § 76-5-106.5(11) (2012).[4] In Thalab's view, the word "if" in that provision showed that imposition of the injunction was discretionary. As discussed above, however, we expressly considered and rejected that very argument in *Kropf. See* 2015 UT App 223, ¶ 22. In doing so, we said that "in context, it is clear that the legislature used 'if' to refer to the possibility that the mandatory injunction did not address parent-time or custody, not the possibility that a criminal stalking injunction had not issued at all." *Id.* (quotation simplified). We find our reasoning there persuasive. And we certainly don't see anything in that 2012 amendment that so conflicts with our ultimate conclusion in *Kropf* that it constituted a legislative abrogation.

¶38 Finally, we note that we would reach this conclusion regardless of whether the 2012 amendments to subsections (10) and (11) are considered individually or instead together. As discussed, in *Kropf*, we placed great emphasis on subsection (9)(b). *See id.* ¶¶ 15, 19, 22. In doing so, we noted that the 2012 version of the Stalking Statute had amended subsection (9)(b) in a way that "grammatically disentangl[ed] the requirement to impose the injunction from the defendant's right to a hearing." *Id.* ¶ 19. And we observed that, with this change, "the legislature . . . more plainly expressed its intent that the injunction be a mandatory consequence of a stalking conviction." *Id. Compare* Utah Code § 76-5-106.5(9)(b) (2008) ("A permanent criminal stalking injunction shall be issued by the court without a hearing unless the defendant requests a hearing at the time of the conviction. The court shall give the defendant notice of the right to request a hearing."), *with id.* § 76-5-106.5(9)(b) (2012) ("A permanent

---

4. This is the same passage that we cited and block-quoted above in paragraph 21.

criminal stalking injunction shall be issued by the court at the time of the conviction. The court shall give the defendant notice of the right to request a hearing."). This conclusion retains equal force now.

¶39 For these reasons, we conclude that neither of the 2012 amendments that Thalab points to in this appeal had the effect of legislatively abrogating *Kropf*.

¶40 **2017 Amendment.**[5] Thalab next turns to one of the amendments to the 2017 version of the Stalking Statute. There, the legislature added a provision providing that, in addition to a conviction for stalking, a conviction for attempted stalking would "serve as an application for a permanent criminal stalking injunction." *See id.* § 76-5-106.5(9)(a)(i)(B) (2017). With this as the springboard, Thalab points to a passage in *Kropf* in which we discussed what we saw as the "good reason[s]" why the legislature required issuance of a permanent criminal stalking injunction after conviction. *See* 2015 UT App 223, ¶ 18. These reasons included providing "an efficient and effective remedy against the threat inherent in the crime of stalking, a threat that is unlikely to have disappeared with the termination of a prison sentence or supervision." *Id.* And we also recognized that the "nature of the crime often involves an obsessive and threatening focus that can leave a victim with the kind of long-term anxiety that only a permanent legal constraint on the stalker can begin to address." *Id.* In Thalab's view, attempted stalking "doesn't carry the same implications as stalking." As a result, Thalab argues that the legislature's inclusion of attempted stalking in the 2017 statute

---

5. The 2017 amendments to the Stalking Statute went into effect on May 9, 2017, *see* Utah Code § 76-5-106.5 (2017), while the conduct at issue in this case occurred from July through September 2017 and Thalab's sentencing hearing was held in November 2017. The particular 2017 amendment at issue in Thalab's argument was therefore applicable to his sentencing.

effectively "undermined" what he saw as a key piece of "*Kropf*'s reasoning for reading the Stalking Statute to require a permanent injunction."

¶41 We're not convinced. In our view, the result in *Kropf* was primarily dictated by the textual analysis discussed above—most notably, the mandatory "shall" in subsection (9)(b)—and any discussion of policy implications was secondary. And the inclusion of attempted stalking did not change that textual analysis at all.

¶42 In any event, we think that many of the same policy concerns still apply to attempted stalking. To be convicted of attempted stalking, a defendant must have engaged in conduct "constituting a substantial step toward" stalking, with the intent to commit stalking or with the "awareness that his conduct is reasonably certain to cause that result." Utah Code § 76-4-101(1)(a)–(b). We see no reason to conclude that such conduct would not "often involve[] an obsessive and threatening focus that [could] leave a victim with the kind of long-term anxiety that only a permanent legal constraint on the stalker [could] begin to address." *Kropf*, 2015 UT App 223, ¶ 18. And we also see no support for Thalab's apparent assertion that a victim of attempted stalking would not learn of the "obsessive or threatening behavior" or suffer "long-term anxiety" from it. After all, to result in a prosecution and then conviction, *someone* had to have learned of the relevant conduct, and it's difficult to imagine many scenarios in which that person would be someone other than the victim (i.e., where the victim would have been kept entirely in the dark).

¶43 Thus, like a victim of completed stalking, it seems that a victim of attempted stalking would also likely benefit from the protections afforded by a permanent criminal stalking injunction. At minimum, we don't think the contrary arguments presented

here are so clear that the inclusion of attempted stalking constituted a legislative abrogation of our decision in *Kropf*.

¶44    **2020 Amendment.** Finally, Thalab points out that in 2020, the legislature amended subsection (9)(a) of the Stalking Statute to state that a "permanent criminal stalking injunction limiting the contact between the defendant and victim *may* be filed in accordance with Section 78B-7-902." Utah Code § 76-5-106.5(9)(a) (2020) (emphasis added).[6] The legislature then moved many of the substantive provisions from the Stalking Statute that we've discussed above into that new statute. These included the 2017 versions of subsections (9)(a), (9)(b), (9)(d), (10), and (11). *Compare id.* § 76-5-106.5(9)–(12) (2017), *with id.* § 78B-7-902(1)–(4) (2020).

¶45    Thalab argues that this change "reinforce[d] that imposing a permanent criminal stalking injunction is discretionary," primarily because it stated that a court "may" file a permanent criminal stalking injunction in accordance with the standards that are now set forth in that separate statute.

¶46    In the briefing, the parties disagree about whether the 2020 amendment is even relevant to the question before us. In the State's view, it's not, because what's at issue is the state of the law in 2017, which was when Thalab was sentenced. In Thalab's view, however, it is relevant because (1) the 2020 amendment was relied on by the district court in its 2023 ruling and (2) the 2020 amendment reinforced Thalab's view of the 2017 amendment and acted as a clarification for what he believes the legislature intended all along. We need not resolve this dispute, however, because we're not persuaded that the changes made in the 2020 amendment were inconsistent with our conclusion in *Kropf* at all.

---

6. As the result of yet more amendments that have been enacted since 2020, a substantially similar version of this particular language is now found in Utah Code section 76-5-106.5(7)(a) (2025).

¶47 It's true, as Thalab points out, that the 2020 version of subsection (9)(a) of the Stalking Statute used the word "may." But it did so in the context of referring to the new statute. And that statute then included the very same language that was previously included in the Stalking Statute and that drove our analysis in *Kropf*—including, of note, the language stating that a court "shall issue a permanent criminal stalking injunction at the time of conviction" (which was put into section 78B-7-902(1)(b)(i)), as well as the language stating that a "court shall issue a permanent criminal stalking injunction granting the following relief where appropriate" (which was put into section 78B-7-902(2)). Indeed, as Thalab himself acknowledges, "the instruction on when and how to impose a permanent injunction remained the same" once placed in the new statute, with the exception of "some stylistic changes." We're accordingly not persuaded that, even if the 2020 version of the Stalking Statute were somehow applicable, it is so inconsistent with the version of the Stalking Statute that we considered in *Kropf* that we can now conclude that *Kropf* has been legislatively abrogated.

¶48 For these reasons, we conclude that *Kropf* remains good law and controls this issue. In light of this, we conclude that the sentencing court was required to issue a permanent criminal stalking injunction at Thalab's sentencing, and because it did not, it issued an illegal sentence. Under rule 22(e), the district court therefore properly corrected Thalab's sentence.[7]

---

7. In his brief, Thalab also argued that the district court erred when it "reopened the judgment . . . and imposed a permanent injunction" on the basis of its conclusion that there was a clerical error. As discussed, however, rule 22(e) is, alone, an appropriate basis on which the court could correct Thalab's sentence. *See Kropf*, 2015 UT App 223, ¶ 9. Thus, we need not also decide whether the court appropriately corrected a clerical error.

## II. Petition for Expungement

¶49 In light of the above, we also affirm the district court's denial of Thalab's petition for expungement. Utah Code section 77-40a-303(2)(f) states that a petitioner is "not eligible" for expungement if "there is . . . a criminal stalking injunction against the petitioner that is in effect."[8] Thus, once the district court concluded that the sentencing court was required to issue a permanent criminal stalking injunction against Thalab in 2017, and once the district court corrected Thalab's sentence to include one, Thalab was ineligible for expungement. For this reason, we affirm the district court's denial of Thalab's petition.

## CONCLUSION

¶50 For the reasons set forth above, we see no error in the district court's decision to correct Thalab's sentence to impose a mandatory permanent criminal stalking injunction, nor do we see any error in its decision to deny Thalab's petition for expungement. We accordingly affirm.

----------

8. This statute has been amended several times since Thalab filed his expungement petition in 2023. *See, e.g.,* Utah Code § 77-40a-303 (2024); *id.* § 77-40a-303 (2025). Because the relevant statutory language remains substantively unchanged, we cite the current version for convenience.